CAROLINE M. ROBINSON, Respondent, *v.* HUBERT E. ROGERS et al., Defendants.

LESLIE C. FERGUSON, Appellant.

**Attorney and client — party to action has absolute right to discharge attorney — attorney's liens — charging lien defined and enlarged by statute — exercise of powers of court in respect to such lien must be consistent with legislative definition — when courts may not direct that property recovered in action be freed from attorney's charging lien upon filing a bond to secure the payment thereof — where only equity of redemption has been recovered lien attaches solely thereto — client may borrow money on property to pay defendant's lien and attorney may be required to execute subordination agreement.**

1. A party to an action has an absolute right to discharge his attorney with or without cause and the court may authorize the substitution of a new attorney on such terms as may be just. (Rules Civ. Pr. 56.)

2. In order to secure payment the attorney has two kinds of lien — a general lien for the entire balance of account on all papers, securities or moneys belonging to his client which came into his possession, and a charging lien for services rendered in a particular action or proceeding upon his client's cause of action. While both kinds of liens were originally of common-law origin and their limitations defined solely by the courts, the charging lien has been not only defined but enlarged by the statute. (Judiciary Law [Cons. Laws, ch. 30], § 475.)

3. When the legislature has enlarged and defined a common-law lien its definition supersedes the definition of the courts and thereafter the exercise of the powers of the courts in respect to such lien must be consistent with the legislative definition. Where, therefore, by virtue of the statute an attorney has a lien on the proceeds of a settlement arranged by the parties to an action, the courts may, under the statute, " determine and enforce the lien," but they cannot declare that the attorney's rights might be adequately protected by other security, and, therefore, no lien shall exist.

4. Where, as the result of an action, the equity of redemption in real property and not the property itself has been obtained for the plaintiff through her attorney's services, the attorney's lien attaches only to such recovery, *i. e.*, the property subject to a payment to the defendants of the amount due to them. If the client desires to borrow the money to pay the defendant's claim upon the security of that

property she has the right to do so because such a loan would in no wise alter the attorney's lien. If the lender for his own greater protection requires a subordination agreement from the attorney the court would have the power to compel the execution of such an agreement upon proper terms that would still keep alive and protect the attorney's lien upon the equity of redemption, but it could not order the attorney to deliver up papers on which he had a retaining lien for all his charges upon security which would secure only his charges in this particular action, nor could it substitute for his charging lien other security in the form of a bond.

*Robinson* v. *Rogers,* 207 App. Div. 802, reversed.

(Argued February 18, 1924; decided April 1, 1924.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 11, 1923, which modified and affirmed as modified an order of Special Term granting a motion by plaintiff for substitution of attorney in place of the appellant herein.

*Leslie C. Ferguson,* appellant in person. The lien granted by the provisions of section 475 of the Judiciary Law is a statutory one, and the court is without power, in the absence of statutory authority, to substitute a bond in lieu thereof. (*Lederer* v. *Goldstone,* 63 Misc. Rep. 322.)

*M. A. Willment* for respondent. The court had power to free from the attorney's lien the property delivered to the plaintiff upon the filing of a bond. (*Yuengling* v. *Betz,* 58 App. Div. 8; *Matter of Mitchell,* 57 App. Div. 22; *Matter of Heinsheimer,* 214 N. Y. 361; *Goodrich* v. *McDonald,* 112 N. Y. 157; *Canary* v. *Russell,* 10 Misc. Rep. 597; *William* v. *Ingersoll,* 23 Hun, 284; 89 N. Y. 508; *Howland* v. *Taylor,* 6 Hun, 237; *Brown* v. *Mayor,* 11 Hun, 21; *Rooney* v. *S. A. R. R. Co.,* 18 N. Y. 368; *Warren* v. *Sime,* 9 How. Pr. 16; *Wilkins* v. *Carmichael,* 1 Doug. 101.)

LEHMAN, J. The plaintiff began this action in March, 1920, to secure a determination that the title to certain

property was held by the defendants only as security for loans made and that the plaintiff had a right of redemption. An interlocutory judgment in plaintiff's favor directing a reference to ascertain the amount due from the plaintiff to the defendants has been entered and affirmed on appeal by the Appellate Division. Thereafter an agreement or stipulation was entered into between all the parties to this action for a settlement of all matters in controversy between them, on condition that, upon the transfer and delivery to the plaintiff of the property which was the subject-matter of the action, the plaintiff should pay the amount of defendants' lien thereon which by agreement was fixed at the sum of $65,000 as of December 31, 1922, subject to adjustment by reason of payments made since that date. In order to pay the defendants the amount of the lien, the plaintiff must borrow the money upon the security of the same property or some of it. Her attorney, Leslie C. Ferguson, has given notice to the defendants that he claims an attorney's lien on this property and has thereby rendered the use of the property as security for such a loan inconvenient if not impossible. The plaintiff thereupon moved for a substitution of attorneys and for the appointment of a referee to take proof as to the amount of compensation the plaintiff is entitled to receive in this action and in other matters and proceedings and the amount if any of the lien of the said Ferguson for his services in this action, for his disbursements and for any other services after crediting the plaintiff with all sums to which she is entitled to credit. The justice at Special Term granted the motion for a reference and by order provided for a substitution of attorneys, and a reference to take proof of " the amount due by the plaintiff to said attorney Leslie C. Ferguson for legal services rendered by him." The order further directed that upon the delivery of the property held by the defendants to the plaintiff, the plaintiff should deliver or file a surety company bond in the amount of $50,000, " conditioned

that the plaintiff will pay to the said Leslie C. Ferguson any sum which may be finally determined to be due him by her for legal services rendered in this action," and that upon the delivery or filing of said bond, " said properties so delivered to the plaintiff shall be freed of any lien the said Leslie C. Ferguson, Esq., may have as attorney of record in this action and that the defendants shall be released from any liability for any lien he may have on said properties by reason of their delivery to the plaintiff," and that the attorney should thereupon deliver to the plaintiff or her substituted attorney all papers and records in his possession. Upon appeal to the Appellate Division the order was modified in somewhat unimportant details and otherwise affirmed.

The plaintiff had an absolute right to discharge her attorney with or without cause and the court could authorize the substitution of a new attorney " on such terms as shall be just." (Rules of Civil Practice, rule 56.) A change of attorneys obviously does not in itself discharge the client from the obligation to pay the attorney for past services. In order to secure such payment the attorney has two kinds of lien — a general lien for the entire balance of account on all papers, securities or moneys belonging to his client which came into his possession, and a charging lien for services rendered in a particular action or proceeding upon his client's cause of action. The general or retaining lien is dependent upon possession; the charging lien was created to " save the attorney's rights where he had been unable to get possession." (*Matter of Heinsheimer*, 214 N. Y. 361, 365.) The order under review protects the attorney's claim for compensation by requiring the delivery of a surety company bond for $50,000, but it directs the attorney to deliver to the plaintiff or her substituted attorney all papers and records in his possession, and by such delivery the attorney will necessarily lose his lien thereon, for that lien is dependent upon possession, and it in terms frees the property subject

to the charging lien from the burden of that lien. This appeal presents the question whether the court has power to destroy an attorney's lien upon the substitution of some other form of security which in the opinion of the court affords the attorney adequate security for the payment of his compensation.

Both kinds of liens were originally created by the courts for the protection of attorneys as officers of the court; and it is urged that the courts which created the liens may also determine that in any given case the lien must be released upon the filing of a bond or the giving of other security. It is true that the courts of this state have, in many cases, ordered attorneys to deliver to their clients papers and records received by the attorneys in the course of litigation, though through such delivery the attorney's retaining lien was destroyed. No case has been called to our attention where this court has considered the basis or reason for the existence of power in the court to compel the delivery of such papers by a discharged attorney before payment of his fees upon the giving of security, but this court has at least assumed the existence of such power. (*Matter of Dunn*, 205 N. Y. 398.) The well-established practice of the courts to compel the attorney to deliver up papers or property under such circumstances in spite of the existence of the attorney's retaining lien thereon does not, however, even by analogy, lead to the conclusion that the courts have power to destroy a charging lien on the client's cause of action attaching to the proceeds of judgment or settlement. While both kinds of liens were originally of common-law origin and their limitations defined solely by the courts, the charging lien has been not only defined but enlarged by the statute. (Judiciary Law [Cons. Laws, ch. 30], section 475.) The somewhat meagre protection afforded to attorneys by the courts of an earlier day was regarded as sufficient at that time, but " there has been a marked advance since then, mainly through the legislature, which has been

[237 N. Y. 467]        Opinion, per LEHMAN, J.        [April,

generous to the members of the legal profession, not only in costs and allowances, but also in providing a lien upon the subject of the action to secure their compensation." (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, 496.) When the legislature has enlarged and defined a common-law lien its definition supersedes the definition of the courts and thereafter the exercise of the powers of the courts in respect to such lien must be consistent with the legislative definition. By virtue of the statute the attorney has a lien on the proceeds of the settlement arranged by the parties to this action; the courts may under the statute " determine and enforce the lien " but they cannot declare that the attorney's rights might be adequately protected by other security and, therefore, no lien shall exist. The statute has provided a lien in all cases and not merely where the client fails to provide some other form of security or protection, and the courts cannot themselves substitute another form of protection for that provided in the statute.

It is to be noted also that the recognized power of the court to compel an attorney to deliver to his client papers upon which the client has a lien is not based upon any assumed right of the court to destroy even a common-law lien when other adequate security has been furnished, but rather upon the control by the courts of their own officers, and their power to compel attorneys to act equitably and fairly towards their clients. In *Clutton* v. *Pardon* (Turner & Russell's Reports, 301) Lord ELDON stated the rule as follows: " every attorney has a right to hold papers till his bill is paid; * * * but where a party has a pressing necessity for papers the Court will order them to be delivered over upon a deposit being made which will cover not only what is due upon the bill but what may be due for the costs of taxation." In *Richards* v. *Platel* (Craig & Phillips' Reports, 79) Lord COTTONHAM casts doubt upon the correctness of this rule and upon the power of the court to order delivery of papers

without payment, even where a pressing necessity exists. In the case of *Matter of Jewitt* (34 Beav. 22) Sir JOHN ROMILLY stated that as Master of the Rolls, in a proper case, he would " order the papers to be delivered over on the amount being secured * * *," and thereafter Mr. Justice CHITTY reviewing these and other cases stated that they proceeded upon the principle " that the court has jurisdiction, not to take away the solicitor's lien, but to prevent injury to the client, on giving the solicitor such a security as covers the whole of his demand in the shape of money brought into court." (*Matter of Galland*, 31 Chancery Division, 296.) Perhaps courts in this state may have, in some cases, ordered the delivery of papers upon a less perfect security than has been required in the English cases cited above, but their orders, like those of the English courts, have been based upon the principle that where the retention of papers by an attorney serves to embarrass a client the attorney should be required to deliver up the papers upon receiving proper security for his compensation, because insistence upon his lien under such circumstances is not in accordance with the standard of conduct which a court may properly require of its officers. That principle cannot give the court jurisdiction itself to declare property subject to a statutory lien free from such lien.

Though the order in this case went beyond the power of the court it does not follow that the court has not ample power to protect the plaintiff from any undue insistence by the attorney upon his statutory lien which would interfere with the plaintiff's right to borrow the money necessary to pay the defendant's claim as provided in the agreement of settlement. The attorney's lien attaches to the proceeds of the judgment or settlement. Those proceeds are in this case not the property held by the defendants, free and clear from any claim of the defendants, but only that property subject to a payment to the defendants of approximately the sum of $65,000. It

[237 N. Y. 467]     Opinion, per LEHMAN, J.     [April,

is the equity of redemption in the property and not the property itself which has been obtained for the plaintiff through the attorney's services, and even if the property comes into the plaintiff's possession upon payment of $65,000, the attorney's lien still attaches only to the property subject to a payment of that sum.   If the client desires to borrow the money upon the security of that property she has the right to do so because such a loan would in no wise alter the attorney's lien.   If the lender for his own greater protection requires a subordination agreement from the attorney the court would have the power to compel the execution of such an agreement upon proper terms that would still keep alive and protect the attorney's lien upon the equity of redemption; but it could not order the attorney to deliver up papers on which he had a retaining lien for all his charges, upon receiving security which would secure only his charges in this particular action, nor could it substitute for his charging lien other security in the form of a bond.

We have not upon this appeal passed upon the plaintiff's contention that the attorney has deprived himself of his lien by his own acts, for no such contention was apparently raised at Special Term and the order is based upon a finding of the existence of a lien.   For these reasons the order should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to Special Term for further proceedings in accordance with this opinion.

HISCOCK, Ch. J., CARDOZO, POUND, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.