In the Matter of the Petition of JAMES O. SEBRING, Respondent, to Enforce an Attorney's Lien.

ANNA M. TOWNER, Appellant.

Fourth Department, May 10, 1933.

*George A. King,* for the appellant.

*James O. Sebring,* respondent, in person.

EDGCOMB, J.   This proceeding is brought by James O. Sebring, an attorney and counselor at law, to impress a lien for legal services upon a check made payable to one Anna M. Towner, and to the proceeds thereof.

Prior to July 26, 1927, one Thomas F. Milan commenced an action in the Supreme Court of Chemung county against Mrs. Towner, the nature of which is not disclosed by the record. Mrs. Towner appeared by Harry H. Hayes, an attorney of Elmira, N. Y. On July 26, 1927, she retained Mr. Sebring to act as counsel in the litigation, and agreed to pay him for his services in connection therewith twenty-five per cent of any award which might be made to her in the action. She did not discharge Mr. Hayes. He continued to act as attorney of record in the case. Mrs. Towner finally recovered an affirmative judgment of $1,010 damages, and $76 costs. Mr. Milan appealed to the Appellate Division, where the judgment was affirmed, and a further judgment of $140 costs was entered in favor of Mrs. Towner. These two judgments, with accrued interest, amounting in all to $1,383.53, were paid to Mr. Hayes on June 28, 1930.

Hayes sent Mrs. Towner a check for $255, and Sebring a check for $150, and retained the balance for his services. Mrs. Towner was dissatisfied with this settlement, and returned the checks, and retained Mr. Sebring to collect the money which she claimed was due her. On July 8, 1930, Mr. Sebring commenced a proceeding in the Supreme Court to have the lien of Mr. Hayes determined, and to compel him to pay over to Mrs. Towner the money received by him, less the amount of his lien thereon. The matter was referred to Mr. Simpson, an attorney of Ithaca, N. Y. Hayes was finally awarded $757.76. In December, 1932, practically two and a half years after the Milan judgments had been paid to Hayes, he sent Mr. Sebring a certified check, payable to the order of Anna M. Towner, for $625.77, the balance of the proceeds of said judgments.

On December 6, 1932, Mr. Sebring wrote Mrs. Towner, acquainting her with the fact that he had received this check, and asking her to come to his office and indorse it. He informed her that he would deduct his own charges and liens, the amount of which he did not state, and fifty dollars, one-half of the referee's fees in the Hayes proceeding, and would give her the balance. On the following day she went to Mr. Sebring's office, and was handed the check by his stenographer. She cashed the check, and used the money.

In his petition in this proceeding Mr. Sebring states that he was the attorney of record for Mrs. Towner in the proceeding which was instituted in the Supreme Court upon her application for an order directing and requiring Mr. Hayes to pay her the moneys received by him as her attorney in the Milan action; that said proceeding was finally terminated; that Hayes' fees were fixed at the sum of $757.76, and that a check for the balance, $625.77, made payable to the order of Mrs. Towner, was delivered to Mr. Sebring;

that Mrs. Towner stole the check; that Mr. Sebring's services in connection with that proceeding were reasonably and fairly worth the sum of $300; that no part of this sum has been paid.

Nowhere in said petition is there any allegation of or reference to any services performed by Mr. Sebring in the Milan action, or of any indebtedness owing by Mrs. Towner to him in connection with that action, either by virtue of a contract, or on a *quantum meruit* basis.

From the petition it is apparent that Mr. Sebring was attempting to impress a lien upon the moneys received from Mr. Hayes for his services in getting the money from Hayes, and not for anything which he had done in the Milan action.

Mrs. Towner did not serve the conventional answer. She filed an affidavit which did not clearly define the issues between the parties. Mr. Sebring added to the confusion by filing replying affidavits, which were extremely informal, and which contained many allegations covering various transactions which he had had with Mrs. Towner. The whole procedure was most informal. The parties apparently stipulated that the controversy might be determined upon the affidavits which had been filed; at least such a recital appears in the preamble of the findings made by the court. No evidence was taken. The court did not have the benefit of seeing and hearing the witnesses, but decided the controverted questions of fact upon mere statements contained in the conflicting affidavits. However, if the parties were content to have their rights determined in such a loose and unsatisfactory manner, I do not suppose that we should object.

Instead of determining the issue raised by Mr. Sebring, viz., whether he had a lien on the proceeds of this check for his services in the proceeding to force Mr. Hayes to pay over the amount of the Milan judgment to Mrs. Towner, and, if so, in what amount, the court totally ignored that question, and treated the proceeding as one to determine the value of Mr. Sebring's services in the Milan action, and fixed his services as counsel in that case at the sum of $376.91, which was twenty-five per cent of the amount of the two judgments, with interest from the date of their entry. The fees of Mr. Simpson, the referee in the Hayes proceeding, were fixed at the sum of $50, and that sum, together with the further sum of $50, which was allowed as costs in the instant proceeding, was made a lien upon this check and its proceeds. That would leave $148.86, out of the $1,383.53 collected on the Milan judgments, available for Mrs. Towner, with Mr. Sebring's bill for services in the proceeding to compel Hayes to turn over to her the money he had collected

on those judgments still unpaid. Rather costly litigation for Mrs. Towner.

We find ourselves, therefore, confronted with a situation where Mr. Sebring started out to get his pay for services in one matter, and ended up by an award for services performed in an entirely different matter. For some unaccountable reason his original claim was lost sight of.

Concededly, Mr. Sebring was retained in the Milan action. Mrs. Towner was privileged to employ as many attorneys as she saw fit, and to make any agreement she pleased as to their pay. The wisdom and propriety of so doing was a matter which concerned her, and not the court. Mr. Sebring was also retained by Mrs. Towner to force Hayes to turn over to her the proceeds of the judgments she had obtained against Milan. An attorney is entitled to be paid a reasonable sum for his services, but that does not necessarily mean that he is entitled to a lien for the value of such services.

The common law gives two kinds of liens to an attorney: (1) A general, possessory lien, commonly called a retaining lien, which affords to an attorney the right to retain all papers and property of his client in his possession, until his entire claim for services has been discharged; (2) a particular lien upon a specific fund or judgment, which has been recovered through the efforts of the attorney, for his compensation in that individual action or proceeding, and which is denominated a charging lien. (*Robinson* v. *Rogers*, 237 N. Y. 467, 470; *Goodrich* v. *McDonald*, 112 id. 157, 162, 163; *Matter of Heinsheimer*, 214 id. 361, 364; *Matter of Rieser*, 137 App. Div. 177, 185, 186.)

The two liens are entirely separate and distinct. The retaining lien attaches generally to papers, money and property belonging to a client which come into the hands of the attorney during the course of his employment (*Matter of Knapp*, 85 N. Y. 284; *Matter of Hollins*, 197 id. 361, 364), and continues until the attorney's charges for all services which he has performed for his client have been paid, not only those pertaining to the matters relating to the papers or property in his hands at the time, but also for any balance due for other professional services. The extent of the lien is measured by the value of the services. (*Matter of Babcock*, 230 App. Div. 323, 326; *Ward* v. *Craig*, 87 N. Y. 550, 561; *Bowling Green Sav. Bank* v. *Todd*, 52 id. 489; *Mathot* v. *Triebel*, 98 App. Div. 328, 330; *Maxwell* v. *Cottle*, 72 Hun, 529.)

The general or retaining lien is dependent upon possession, and does not attach to property which is not in the hands of the attorney. (*Robinson* v. *Rogers*, 237 N. Y. 467, 470; *Matter of Heinsheimer*, 214 id. 361, 364.) Its very name, "retaining lien," indicates that the

property must be in the attorney's possession, or else he could not " retain " it. He keeps the property as security for his bill against his client until his claim is satisfied. It confers no further rights upon the attorney, and cannot be actively enforced.

The charging lien binds the award or judgment which has been obtained through the attorney's efforts, and prevents a dishonest client from receiving the fruits of his attorney's labors without compensating him for his services. This lien does not depend upon possession. It is good no matter in whose hands the decision, award or judgment may be.

Both of these liens existed at common law. (*Robinson* v. *Rogers*, 237 N. Y. 467, 471; *Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 id. 492, 498, 499; *Matter of Heinsheimer*, 214 id. 361, 364; *Goodrich* v. *McDonald*, 112 id. 157, 163.) They were originally created by the courts in an effort to protect an attorney from a client who was willing to take the benefit of his attorney's skill and labor, but who was unwilling to give anything in return.

The statute has not only enlarged, but has virtually superseded and taken the place of the old common-law charging lien, so that now, when we speak of a charging lien, we refer to the statutory lien. (*Robinson* v. *Rogers*, 237 N. Y. 467, 471, 472.)

The statutory lien, however, is not exclusive; it is cumulative. The old common-law retaining lien still exists, and where an attorney has in his possession papers, documents or property of his client, he is, in a proper case, entitled to hold the same until his claim for services is paid. (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, 502; *Matter of McGuire*, 106 App. Div. 131, 132; *Mathot* v. *Triebel*, 98 id. 328, 330; *Matter of Ney Co.*, 114 id. 467.)

The statute, section 475 of the Judiciary Law, reads as follows: "Attorney's lien in action or special proceeding. From the commencement of an action or special proceeding, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosoever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court upon the petition of the client or attorney may determine and enforce the lien."

I have no doubt that, if the petitioner had proceeded along the line he started, and had sought to impress upon this check, and its proceeds, a lien for his services in the proceeding which he instituted to collect the money paid to Hayes on the Milan judgments, he would be entitled to relief. That was a special proceeding; Mr.

Sebring appeared as attorney for Mrs. Towner in the matter; he obtained for his client a final order in her favor; the statute gave him a lien on the order and the proceeds thereof, no matter in whose hands they might come, for his services in that particular proceeding, but not for his services generally. (*Robinson* v. *Rogers*, 237 N. Y. 467; *Matter of Heinsheimer*, 214 id. 361; *Matter of Albrecht*, 225 App. Div. 423; affd., 253 N. Y. 537; *Neier* v. *Droesch Realty Corp.*, 232 App. Div. 534; affd., 257 N. Y. 550.)

But the trouble is that the relief which has been accorded the petitioner is based upon an entirely different theory. He has been given a lien, not for services in the Hayes proceeding, but for work done in the Milan action.

It is argued that this check represents the proceeds of the Milan judgment, which, it is said, was obtained through Mr. Sebring's efforts, and that the statute, therefore, gives him a lien on the check and its proceeds for his services in that action. But if we give to this provision of the Judiciary Law the liberal construction which we must, because of its remedial character (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.*, 173 N. Y. 492, 499), it still is not broad enough to permit the court to impress a lien on this money for the petitioner's services in the Milan case.

It will be noted that the statute affords an attorney for a defendant a lien upon his client's counterclaim from " the service of an answer containing a counterclaim." It has repeatedly been held that an attorney for a defendant acquires no statutory lien unless the answer sets up a counterclaim. (*Matter of Albrecht*, 225 App. Div. 423, 425; affd., 253 N. Y. 537; *White* v. *Sumner*, 16 App. Div. 70; *Longyear* v. *Carter*, 88 Hun, 513; *National Exhibition Co.* v. *Crane*, 167 N. Y. 505.)

The pleadings in the Milan action are not before us, and there is nothing in the record to show that any counterclaim was set up by Mrs. Towner in her answer in that case. But giving the petitioner the benefit of the doubt, and assuming that the answer did contain a counterclaim, as we undoubtedly are justified in doing because of the affirmative judgment which was awarded the defendant, still Mr. Sebring is not entitled to a charging lien for his services in that action. He was not the attorney of record for Mrs. Towner. He was only counsel. Hayes was the attorney, and remained in the case until its close. Sebring only assisted him. It may be that Sebring was the master mind which brought about the favorable result; it may be, and doubtless is, a fact that he performed valuable services in the case, and that he should receive his reward. But that does not mean that he is entitled to a lien on the fund, unless it is given him by the statute. Whatever wrong may have

been committed against him must be redressed in the usual form, and in a court of law, and not in the summary manner prescribed by the court at Special Term. The statute only gives a lien to " the attorney who appears for a party." It is not broad enough to include counsel; it is confined to the attorney of record. (*Holmes* v. *Bell*, 139 App. Div. 455, 462; *Brown* v. *Mayor*, 9 Hun, 587, 596; *Matter of Dailey* v. *Wellbrock*, 65 App. Div. 523, 525, 526; *Weinstein* v. *Seidmann*, 173 id. 219, 220; *Harding* v. *Conlon*, 146 id. 842, 846; *Schiefer* v. *Freygang*, 141 id. 236; *Matter of Rieser*, 137 id. 177.)

Throughout this entire proceeding petitioner has proceeded upon the theory that he had a charging lien upon this check and its proceeds, as is evidenced by the fact that he made no attempt to have the court determine the value of his services in the various other matters which he claims to have had in hand for Mrs. Towner, or to have it determined that he might retain this check until his bill for all such services had been paid. He now suggests that he can sustain the order appealed from upon the theory that he has a retaining lien.

We need spend very little time on this proposition. As before noted, there can be no retaining lien unless the property to which it is to attach is in the hands of the attorney. No possession — no retaining lien. Neither this check nor its proceeds were in Mr. Sebring's hands when this proceeding was instituted, nor are they now in his possession, and there is nothing to which a retaining lien can attach, and no property which he can retain until his debt is paid.

If Mrs. Towner actually stole this check when she went to Mr. Sebring's office in December, 1932, as he claims, or if she obtained it by fraud, Mr. Sebring has his remedy. In such a case he could doubtless bring an action in replevin (*Kline* v. *Green*, 83 Hun, 190), and, if he succeeded and regained possession of the check, his retaining lien would immediately attach thereto. The lien of an attorney cannot be defeated by the fraud of the owner of the property to which the lien attaches. (*Kline* v. *Green*, 83 Hun, 190.)

Petitioner' right to recover possession of this check, however, cannot be determined in this proceeding. What happened in Mr. Sebring's office when Mrs. Towner obtained possession of this check is very much in dispute. We have before us a confused mass of conflicting affidavits on the subject. Mr. Sebring insists that Mrs. Towner got possession of the check by force, and he charges her with its theft. She, on the other hand, asserts that she came rightfully into possession of it. No court would be justified, upon the unsatisfactory state of this record, in holding that Mrs. Towner stole this check, or that she obtained it by force

or fraud, and the finding of the court below to that effect must be reversed. That issue is of sufficient importance to require that it be determined in the regular way, and not as a collateral issue in this proceeding. Mrs. Towner is entitled to have her right to retain this property determined by a jury. She may insist upon that right. Until that issue is decided, and until we know whether Mr. Sebring is legally entitled to regain possession of this check or its proceeds, there is nothing to which a retaining lien can attach.

It is apparent, therefore, that the petitioner is not entitled to any lien on this check for his services in the Milan case, and that the order appealed from cannot stand.

There are no findings upon which we can give Mr. Sebring a lien for his services in the Hayes matter. While we have authority to make new ones, the record is most unsatisfactory, and, if we attempt to do so, we must resort to informal, rambling affidavits upon which to base such findings. However, we have as much before us as the court below had when the present findings were made. We would like, if such a thing is possible, to end this litigation, and stop the resulting expense to the parties. We think that Mrs. Towner should be able to retain for her own use a portion of the $1,383.53 which was paid in satisfaction of the Milan judgments, and that she should not be compelled to pay out the entire amount, and perhaps more, in attorneys' fees to recover and collect the amount which was due her. We have, therefore, concluded that we should not send the parties back to try the case over again, but should make new findings, and give to Mr. Sebring a lien on this check and its proceeds for his services in the Hayes proceeding, which was the theory upon which he deemed himself entitled to relief when he instituted this proceeding. The difficulty in so doing is the unsatisfactory state of the record in relation to the value of Mr. Sebring's services in connection with the Hayes matter. He says in his petition that those services were worth $300, but he fails to state what he did, or to detail in the slightest particular the service which he performed.

We need not arbitrarily adopt Mr. Sebring's estimate of the value of his service.

In the first place he is vitally interested in the outcome of this litigation, and the court is never bound to give full faith and credit to the evidence of an interested witness, even though he is not directly impeached, or his testimony is uncontradicted. The credibility of such a witness must be determined as a question of fact. (*Gildersleeve* v. *Landon*, 73 N. Y. 609; *Brooklyn Crosstown R. R. Co.* v. *Strong*, 75 id. 591; *Wohlfahrt* v. *Beckert*, 92 id. 490, 497, 498.)

In the second place the testimony of the petitioner is in the nature of opinion evidence, and the trier of the fact is not required to surrender his judgment or follow blindly the opinion of some expert witness. Such evidence is advisory only, and can be rejected or accepted as it appeals to the judgment and conscience of the tribunal charged with the decision of the facts. (*Brooklyn Heights R. R. Co.* v. *Brooklyn City R. R. Co.*, 124 App. Div. 896, 901, 902; affd., 196 N. Y. 502; *Charman* v. *Tatum*, 54 App. Div. 61; affd., 166 N. Y. 605; *Matter of Ellis*, 176 App. Div. 425, 429; *Jetter* v. *Zeller*, 119 id. 179; *Weaver* v. *Scripture*, 125 Misc. 741; affd., 214 App. Div. 852; *Head* v. *Hargrave*, 105 U. S. 45; *Tubiola* v. *Baker*, 225 App. Div. 420; *The Conqueror*, 166 U. S. 110.) This is so, although there is no allegation in any of the answering affidavits that such services were worth less than the sum mentioned by the petitioner, and although there is no evidence to the contrary. (*Cornish* v. *Farm Buildings Fire Ins. Co.*, 74 N. Y. 295.)

This is not a matter so highly technical in its nature that none but experts are capable of determining the value of petitioner's services. The trier of the fact, whether it be a jury or the court, knows something of the value of legal services, and is permitted to apply its experience and knowledge to the task at hand, and to exercise its independent judgment, irrespective of the opinion of some witness who claims to have peculiar knowledge upon the subject.

In view of all the facts, we feel that we would not be justified in allowing the petitioner more than $100 for his services in the Hayes proceeding. Had those services been worth more, Mr. Sebring had ample opportunity to make proof of that fact, and to inform the court of the nature, character and extent of his services, and of the difficulties which he encountered in connection with his work, and just what he did to benefit his client. The fact that Mr. Sebring allowed the decision to be delayed for two and one-half years after the Milan judgments were paid, and the seemingly large sum which was allowed Mr. Hayes, more than half of the recovery, would not indicate any very aggressive effort on Mr. Sebring's part in behalf of his client. All this has considerable bearing on the value of his services.

I do not see how Mr. Simpson, the referee in the Hayes proceeding, is entitled to any lien on this money for his fees.

The conclusion which has been reached will necessitate the making of new findings, and the disapproval and reversal of those made by the court below.

The provision relating to Mr. Simpson's fees, and the provision giving to Mr. Sebring a lien for $376.91 for his services in the Milan

case, should be stricken from the order appealed from, and in place thereof there should be substituted a provision allowing Mr. Sebring a lien in the sum of $100 for his services in the proceeding to recover from Mr. Hayes the money paid to him in satisfaction of the Milan judgments, and as thus modified the order should be affirmed, without costs.

All concur.

Order modified on the law and facts in accordance with the opinion and as modified affirmed, without costs of this appeal to either party. Findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.