In the Matter of the Accounting of LEONA S. HOWLETT, as Executrix of HAROLD A. HOWLETT, Deceased, Respondent. S. J. REYNOLDS, Appellant.

Decree reversed on the facts and matter remitted to the Surrogate's Court for further proceedings, with costs to appellant, on the ground that the verdict of the jury and decision of the Surrogate are against the weight of evidence.

WHEELER, J. (dissenting). This controversy, involving a claim of $15,000 filed by the appellant, S. J. Reynolds, against the estate of Harold A. Howlett, deceased, was tried before the Surrogate and a jury, resulting in a unanimous verdict rejecting the claim. Although the verdict of the jury was advisory only (Surrogate's Ct. Act, § 68), the Surrogate adopted the findings implicit therein and entered a decree dismissing the claim. On this appeal the majority proposes to reverse both the verdict of the jury and the decree of the Surrogate upon the ground that each is against the weight of the evidence.

In view of the extraordinary circumstances revealed by this record, I feel that the verdict was entirely proper, and, therefore, dissent.

The Harry Howlett Corporation was formed in 1944 for the purpose of carrying a Studebaker automobile agency in the city of Syracuse. The entire capital was furnished by Mrs. Howlett, wife of the decedent, who advanced $5,000 and by the appellant, Reynolds, who advanced $10,000. Fifty shares were issued to Mrs. Howlett, and the remaining 100 shares to claimant's sister, Gladys Cagney, who, it is claimed, was claimant's nominee.

Two years later (1946) Reynolds, having obtained for himself a Ford agency, proposed the sale of his stock in the corporation to decedent. Preliminary negotiations between the two parties were had in the office of attorney Lawrence Sovik on the 30th day of August, 1946. The actual sale took place on October 11, 1946, also in Mr. Sovik's office, when the Cagney stock was transferred to Mr. Howlett and checks aggregating $20,200 payable to Mrs. Cagney were delivered to Mr. Sovik and later indorsed to claimant. The plaintiff in this proceeding is now asserting that in addition to this cash payment there was an oral agreement made in which it was provided that an additional annual sum of $3,000 should be paid by Howlett " off the top of the profits of the company for a five-year period."

Whatever the agreement, it was entirely oral, and inasmuch as claimant was prohibited from testifying to personal transactions with decedent under section 347 of the Civil Practice Act, the claim necessarily had to stand or fall on the sole evidence of claimant's attorney, Mr. Sovik, who, although not incompetent to testify under section 347, might well be held to be an interested witness.

Mr. Sovik testified as to what occurred in his office on August 30, 1946. From his testimony it appears that claimant was to sell the Cagney stock to decedent for its book value amounting approximately to $20,000, and in addition Reynolds was to receive, as heretofore stated, the $3,000 annual payments during a five-year period. Mr. Sovik very wisely suggested that this important agreement should be reduced to writing, but for reasons best known to the parties themselves, the suggestion was rejected. The arrangements so made on August 30th appear to have been tentative only, as Howlett at that time was uncertain as to his ability to finance such a transaction.

Mr. Sovik learned nothing further concerning the matter until October 11, 1946, when Mr. and Mrs. Howlett came into his office. Mr. Howlett informed the witness that he had raised the money and upon presenting checks aggregating $20,200 Mr. Sovik called his client, Reynolds, on the telephone and inquired if it was all right to transfer the stock. Upon receiving an affirmative answer, the stock was transferred and the checks delivered. On this occasion nothing whatever was said concerning the alleged agreement to pay the additional sum of $3,000 per year. The triers of the fact may well have deemed this omission as significant, especially inasmuch as one third of this amount was to be paid out of Mrs. Howlett's share of the corporation's profits. Mrs.

Howlett has testified that she never heard of any such agreement until after her husband's death some four years later, although in the interim she had had several conversations with Reynolds.

Although during the ensuing years the profits of the corporation were relatively large, no further payments were ever made to the claimant. On various occasions, according to Mr. Sovik, he had heard conversations between these two men which, it appears, were more or less acrimonious on the part of Howlett and in which Howlett, while not denying that he owed money to Reynolds, was, nevertheless, challenging the latter to sue. No legal action was ever instituted during Howlett's lifetime.

On this appeal appellant urges that inasmuch as Mr. Sovik's evidence concerning the alleged agreement was uncontradicted, the Surrogate erred in not directing judgment for appellant. The short answer is that appellant made no motion for a directed verdict, thereby conceding that there was a question of fact for the jury. The more important answer, however, lies in the fact that the credibility of the evidence given by the interested witness, Mr. Sovik, although uncontradicted and unimpeached, was for the jury and the Surrogate to determine. (*Foreman* v. *Foreman*, 251 N. Y. 237, 242; *McKeon* v. *Van Slyck*, 223 N. Y. 392, 398; *Tousey* v. *Hastings*, 194 N. Y. 79; *Matter of Kindberg*, 207 N. Y. 220, 227; *Matter of Sebring*, 238 App. Div. 281.) In the *Sebring* case Justice EDGCOMB stated the rule as follows (p. 289) : " the court is never bound to give full faith and credit to the evidence of an interested witness, even though he is not directly impeached, or his testimony is uncontradicted. The credibility of such a witness must be determined as a question of fact." This principle is peculiarly applicable where from the circumstances the evidence of a witness is not susceptible of direct contradiction. (*Matter of Kindberg, supra*.)

In the instant case, in view of Mr. Howlett's death, contradiction was impossible. Under such circumstances, the evidence of any witness testifying in support of a claim against a decedent's estate should be closely scrutinized and received with great caution. (*Ward* v. *New York Life Ins. Co.*, 225 N. Y. 314, 322.)

In *Foreman* v. *Foreman* (*supra*) the action was by the husband against the estate of his deceased wife to compel a conveyance of real estate in fulfillment of a constructive trust. It was there written (p. 242) : " As to this there is a question of credibility which the trier of the facts, and not this court, must resolve. True, the testimony is uncontradicted, and to some extent, besides, has corroboration in the circumstances, yet *in view of the death of the wife*, with direct contradiction difficult, if not impossible, a question of fact remains ". (Emphasis supplied.)

While the jury was burdened with the duty of passing upon the credibility of Mr. Sovik's testimony, I think we may reasonably and properly assume that he was perfectly honest in giving his testimony. It should be noted that he was testifying some seven years after the transaction had been completed; that he had no memorandum with which to refresh his memory. Moreover, although he was informed of the tentative arrangements made in his office on August 30, 1946, he knew nothing concerning any other or different conditions or agreements between the parties which might have been made after Reynolds had ceased to be decedent's financial backer and before the closing date, October 11th. The challenge to his credibility in these particular circumstances does not necessarily involve his veracity but merely tests his memory of long-past events and his opportunity to know what actually transpired between these two men.

In view of the large profits of this corporation, there may well have been a discussion as to further payments being paid to Reynolds, but the evidence of Mr. Sovik would seem to indicate that it was not a part of the stock sale agreement, and at most a "gentlemen's agreement" without consideration. Otherwise, there seems to be no good reason for not reducing it to writing as suggested by Mr. Sovik, or for his failure to mention the subject to either Mr. or Mrs. Howlett at the time of closing. Moreover, claimant rested on his rights during Howlett's lifetime, in spite of Howlett's attitude that he would pay nothing unless forced to do so.

Under the unusual circumstances here disclosed, I am convinced that the verdict of the jury in rejecting this claim was correct. The judgment should be affirmed.

McCurn, P. J., Vaughan and Piper, JJ., concur in decision; Wheeler, J., dissents and votes for affirmance in an opinion, in which Kimball, J., concurs. Present — McCurn, P. J., Vaughan, Kimball, Piper and Wheeler, JJ.

Decree reversed on the facts and matter remitted to the Surrogate's Court for further proceedings, with costs to appellant, on the ground that the verdict of the jury and decision of the Surrogate are against the weight of evidence.