UNIVERSAL ACUPUNCTURE PAIN
SERVICES, P.C., Plaintiff,

v.

STATE FARM MUTUAL AUTOMO-
BILE INSURANCE COMPA-
NY, Defendant.

State Farm Mutual Automobile
Insurance Company,
Counter–Plaintiff,

v.

Universal Acupuncture Pain Services,
P.C., Dipak Nandi, and Dongxing
Sun, Counter–Defendants.

No. 01 Civ. 7677(SAS).

United States District Court,
S.D. New York.

Nov. 12, 2002.

Richard J. Quadrino, Quadrino & Schwartz, P.C., Garden City, NY, for movants.

Anthony J. Mamo, Jr., Cortland Manor, NY, for respondents.

Gregory La Sorsa, La Sorsa & Beneventano, White Plains, NY, for Nandi.

Dongxing Sun, Ergo Park, NY, pro se.

Ted S. Helwig, Ross O. Silverman, Gil M. Soffer, Katten Muchin Zavis, Chicago, IL, for State Farm Mut. Auto. Ins.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Quadrino & Schwartz, P.C. ("Q & S"), former counsel for Universal Acupuncture Pain Services, P.C. ("Universal") and Dr. Dipak Nandi, has filed an application seeking: (1) an expedited hearing to fix the retaining and charging liens of Q & S and to determine the amount of attorney's fees and disbursements due Q & S; and (2) an order requiring payment of the amount due fixed by the Court, or requiring the clients to post adequate security to pay the amount due fixed by the Court. Q & S has refused to produce its files to La Sorsa & Beneventano ("La Sorsa"), incoming counsel for Universal and Nandi, until this issue is resolved.

Q & S contends that it is entitled to be compensated immediately in *quantum meruit* for the reasonable value of the legal services it provided to Universal and Nandi (collectively, "respondents") in this matter, *see* Memorandum of Law in Support of Motion to Fix and Determine Attorney's Liens ("Q & S Memo") at 3–5, and that it properly maintains both a charging and a retaining lien on respondents' case file that cannot be extinguished until Q & S's fees and disbursements are fixed and paid, *see id.* at 2–3. Universal and Nandi argue first, that Q & S was discharged for cause

and therefore is not entitled to either a retaining or a charging lien, and second, that the Court should defer fixing the amount of Q & S's lien, if any, until the conclusion of the case. *See* Affirmation of Anthony J. Mamo, respondents' counsel ("Mamo Aff."), at 1–2.

For the reasons stated below, Q & S's Motion to Fix and Determine Attorney's Liens is denied, and Q & S is ordered to release respondents' case file to incoming counsel upon receipt of payment for its disbursements.

## I.  FACTUAL BACKGROUND

In May 2001, Universal retained Q & S to represent it in a suit against State Farm Mutual Automobile Insurance Company ("State Farm") for payment of overdue claims.[1]  The Retainer Agreement ("Retainer") provides for compensation on a contingency fee basis.[2]  *See* 5/01/01 Retainer.  State Farm asserted counterclaims against Universal and third-party defendants, Dipak Nandi, the founder of Universal, and Dongxing Sun, a licensed acupuncturist.  *See* Second Amended Answer and Counterclaim ("Counterclaim").  Q & S agreed to represent Nandi on the counterclaims as well,[3] also on a contingency basis, but no new retainer was signed.

On August 19, 2002, Universal and Nandi discharged Q & S as counsel, and directed the firm to refrain from performing any further work in the action and to immediately transfer all files to incoming counsel.  *See* 8/19/02 Letter from Nandi to Q & S,

Ex. A to Reply Affidavit of Richard J. Quadrino ("Quadrino Reply Aff.").  By letter dated September 4, 2002, Q & S advised Universal and Nandi that it elected to be compensated on a *quantum meruit* basis for the reasonable value of the legal services rendered on their behalf, and that it would maintain a retaining lien on respondents' files until the amount reflected on the enclosed invoice was paid.[4]  *See* 9/4/02 Letter from Q & S to Nandi, Ex. B. to Mamo Aff., at 1.  Universal and Nandi have not paid the amount due and incoming counsel has not been provided access to the file, which has resulted in delays in discovery.  *See* 9/20/02 Letter from La Sorsa to the Court ("9/20/02 La Sorsa Letter") at 1–2 (stating that the firm's inability to access its clients' file has rendered it unable to comply with outstanding discovery requests in accordance with the court-ordered schedule).

## II.  PROCEDURAL HISTORY

On September 16, 2002, the Court endorsed a stipulation between Q & S and La Sorsa providing that La Sorsa would be substituted for Q & S as counsel of record in this matter.  *See* Stipulation of Substitution.  On September 18, 2002, Q & S filed the instant motion to fix and determine attorney's liens, brought on by Order to Show Cause.  *See* 9/19/02 Order to Show Cause.  On September 20, 2002, La Sorsa requested that the Court direct the transfer of the file in this matter from Q & S to La Sorsa, *see* 9/20/02 La Sorsa Letter

---

1.  This Court's jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.

2.  The Retainer states that "In the event of recovery or settlement of any and all claims, the legal fee shall equal (20%) percent of the sum recovered, plus any fees paid by the insurer as required by law" and that "In the event that there is no recovery on the claim,

there shall be no legal fee for this matter." *See* 5/01/01 Retainer at 1.

3.  Dongxing Sun defended the counterclaims pro se.

4.  The invoice submitted to plaintiffs on September 4, 2002, is for $208,886.25 for professional services rendered and $8,365.40 for disbursements.  *See* 9/4/02 Invoice # 13050.

at 2, to which Q & S responded that the Court should await disposition of the pending motion, *see* 9/20/02 Letter from Q & S to the Court at 1. The Court denied La Sorsa's request on September 23, 2002, and suspended all discovery deadlines until further order of the Court. *See* 9/20/02 La Sorsa Letter at 2.

On September 26, 2002, Nandi filed an affidavit in support of his opposition to the Order to Show Cause, alleging that Q & S was discharged for cause. *See* Affidavit of Depak Nandi ("Nandi Aff."), Ex. A. to Mamo Aff., at 1–2. A reply was filed by Q & S on October 1, 2002, *see* Reply Memorandum of Law in Further Support of Motion to Fix and Determine Attorney's Liens ("Q & S Reply"), and a hearing was held on October 2, 2002. Following the hearing, Q & S submitted a supplemental letter on October 4, 2002, *see* 10/4/02 Letter from Q & S to the Court, to which respondents replied on October 7, 2002, *see* 10/7/02 Letter from Mamo to the Court.

On October 17, 2002, the Court inquired of Q & S and La Sorsa whether they had discussed how to split any potential recovery on a contingency basis, as directed at the hearing. Q & S and La Sorsa informed the Court that there had been no discussions between the two firms concerning their respective portions of potential legal fees and that they believe such discussions would be premature.[5] *See* 10/18/02 Letter from La Sorsa to the Court ("10/18/02 La Sorsa Letter") at 1; 10/21/02 Q & S Letter at 1. In addition, Q & S provided the Court, as directed, with a breakdown of the firm's time spent litigating State Farm's counterclaims. *See*

9/4/02 Invoice # 13050, Attachment to 10/21/02 Q & S Letter.

## III. DISCUSSION

### A. Fixing the Retaining and Charging Liens

Under New York law, a client has an absolute right to terminate the attorney-client relationship at any time, with or without cause. *See Cohen v. Grainger, Tesoriero, & Bell,* 81 N.Y.2d 655, 658, 602 N.Y.S.2d 788, 622 N.E.2d 288 (1993) *("In re Cohen").* "An attorney, however, is not left without recourse for terminations lacking cause." *Tops Mkts., Inc. v. Quality Mkts., Inc.,* No. 93–CV–0302E(F), 2001 WL 392082, *2 (W.D.N.Y. Apr.4, 2001). "If a client exercises the right to discharge an attorney after some services [have been] performed but prior to the completion of the services for which the fee was agreed upon, the discharged attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the completed services." *Id.* at *2 (citing *Matter of Cooperman,* 83 N.Y.2d 465, 473, 611 N.Y.S.2d 465, 633 N.E.2d 1069 (1994)).

Either the client or the attorney can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of *quantum meruit,* or they may agree that the attorney will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case. *See Lai Ling Cheng v. Modansky Leasing Co.,* 73 N.Y.2d 454, 458, 541 N.Y.S.2d 742, 539 N.E.2d 570 (1989).

---

**5.** Q & S requested an *in camera* discussion with the Court to discuss potential constraints on its ability to remain on contingency, if the Court were to decide that Q & S may not elect to be paid a fixed dollar amount in *quantum meruit. See* 10/21/02 Letter from Q & S to the

Court ("10/21/02 Q & S Letter") at 2; *see also* 11/8/02 Letter from La Sorsa to the Court at 1 (opposing any *in camera* discussions that would reveal client confidences). The Court has not and will not meet *in camera* with Q & S.

A discharged attorney may seek two forms of protection. *First*, under New York statutory law, a departing attorney is entitled to a charging lien on any recoveries obtained by her former client in the proceedings in which she rendered her services. *See* N.Y. Judiciary Law § 475 (McKinney's 2002) ("From the commencement of an action, special or other proceeding in any court ... the attorney who appears for a party has a lien upon [her] client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in [her] client's favor, and the proceeds thereof. ..."). *Second*, under New York common law, an attorney is entitled to a retaining lien on "all client papers and property, including money, that come into the attorney's possession in the course of employment." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991). A retaining lien remains in effect until the attorney has been reimbursed for expenses and, as a general rule, the attorney's fee has been determined and either paid or secured. *See Lai Ling*, 73 N.Y.2d at 457–59, 541 N.Y.S.2d 742, 539 N.E.2d 570. However, if the attorney is discharged for cause, she has no right to compensation or a retaining lien, notwithstanding the existence of a retainer agreement. *See Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979, 489 N.Y.S.2d 36, 478 N.E.2d 177 (1985) (citations omitted).

The rule regarding retaining liens applies differently in contingency cases. When an attorney in a contingency fee case is discharged by her client without cause and prior to the conclusion of the case—*i.e.*, before the client's right to recovery has been established,[6] the "court has discretion to defer the determination of the fair and reasonable value of a discharged attorney's fees under *quantum meruit* until the conclusion of the litigation because the amount of recovery is an element in fixing such, and can substitute a statutory charging lien ... in place of the retaining lien to secure payment of such." *Tops Mkts.*, 2001 WL 392082, at *3. *See also Security Credit Sys., Inc. v. Perfetto*, 242 A.D.2d 871, 662 N.Y.S.2d 674, 674–75 (4th Dep't 1997) (*"Perfetto"*) ("Whether to direct that the fee be paid before the client's files are turned over or secured by a lien on the proceeds of any recovery is a matter within the court's discretion.") (citations omitted); *Steves v. Serlin*, 125 A.D.2d 780, 509 N.Y.S.2d 666, 667 (3d Dep't 1986) (finding any amount owed on client's account was limited to disbursements expended, since attorney was retained on a contingent-fee basis and plaintiff had not yet recovered); *Matter of Shaad*, 59 A.D.2d 1061, 399 N.Y.S.2d 822 (4th Dep't 1977) (holding amount of lien to be determined on a *quantum meruit* basis subsequent to any recovery in underlying action).

While the client in a contingency case is required to pay her former attorney what she owes upon discharge, the amount owed is limited to the attorney's disbursements since there has not yet been a recovery. *See Steves*, 509 N.Y.S.2d at 667. Thus, a court can order the files be returned to the client before the attorney's fees have been paid, but not before

6. When an attorney in a contingency fee case is discharged after it has been established that plaintiff will have no recovery upon which she would be entitled to a percentage thereof, the attorney has no right to recover the reasonable value of her services under *quantum meruit*. *See Tuff & Rumble Mgmt., Inc. v.* *Landmark Distribs., Inc.*, 254 A.D.2d 15, 677 N.Y.S.2d 788, 788 (1st Dep't 1998) (holding that attorney's recovery is limited to her disbursements because underlying action, for which there was a contingent fee agreement, concluded without any recovery).

the disbursements have been paid. *See Tuff*, 677 N.Y.S.2d at 788–89 (citing *Steves*, 509 N.Y.S.2d at 666); *see also Perfetto*, 662 N.Y.S.2d at 674.

The court's power to compel an attorney to deliver a client's file upon which the attorney has a common law retaining lien derives from its power to compel attorneys to act equitably and fairly towards their clients. *See Robinson v. Rogers*, 237 N.Y. 467, 471–73, 143 N.E. 647 (1924) ("[W]here the retention of papers by an attorney serves to [prejudice] a client the attorney should be required to deliver up the papers upon receiving proper security for his compensation, because insistence upon his lien under such circumstances is not in accordance with the standards of conduct which a court may properly require of its officers.").

■ The Retainer between Q & S and Universal clearly provides that Q & S is not entitled to legal fees if there is no recovery on Universal's claims, making this a typical contingency case. Although Q & S has a right to elect to be compensated in *quantum meruit*,[7] notwithstanding the contingent fee arrangement, the Court has discretion whether to fix Q & S's legal fees now, or wait until the conclusion of the litigation. There are several reasons why that discretion should be exercised by fixing the fees at the conclusion of the litigation.

*First*, the determination of a reasonable fee award in *quantum meruit* for the legal services rendered by Q & S in this matter will significantly delay the progression of the case. A *quantum meruit* award usually requires a hearing to determine the "nature and extent of the attorney's services, the amount of time involved, the

value of the services rendered, the amount of services still to be performed, the likelihood of plaintiff's recovery and, if so, the amount thereof." *Corsi v. Ott*, 44 A.D.2d 906, 357 N.Y.S.2d 746, 747 (1974) (finding that a *quantum meruit* award for legal services rendered could not be made without a hearing). The presentation and evaluation of such evidence will undoubtedly delay the adjudication of the merits of the case.

This case has already been unnecessarily delayed. As a result of Q & S's refusal to relinquish respondents' case file, many documents responsive to the parties' discovery demands have not been exchanged, and incoming counsel has been unable to identify what additional discovery is needed. *See* 9/20/02 La Sorsa Letter at 2; 9/13/02 Letter from Quadrino to La Sorsa, Ex. C to Mamo Aff., at 1. To further delay this litigation would be unfairly prejudicial to Universal and Nandi and would circumvent the objectives of Fed.R.Civ.P. 1, which are to "construe and administer the Federal Rules of Civil Procedure to enable federal litigation to proceed without undue delay." *See also Misek–Falkoff v. International Bus. Machs. Corp.*, 829 F.Supp. 660, 664 (S.D.N.Y.1993) ("Controversies between parties and their attorneys should not hold federal litigation hostage.").

*Second*, it would be a waste of judicial resources for the Court to set Q & S's fee now. Discovery has only just begun and the possibility of ultimate recovery by Universal and Nandi is completely unknown. If there is no recovery, there will be no money from which to draw Q & S's *quantum meruit* award and Q & S will be unable to recover attorneys' fees. *See*

---

7. Because Q & S has the right to elect a fixed dollar amount in *quantum meruit,* assuming there is some recovery, and I am not ordering Q & S to remain on a contingency, there is no

need for an *in camera* discussion regarding Q & S's inability to remain on contingency. *See supra* note 5.

*Steves,* 509 N.Y.S.2d at 667 (holding attorney retained on a contingency basis is not entitled to fees before an award has been recovered by plaintiff). Thus, any fee that I set at this time might become moot. If there is a recovery, the attorney's fee must be evaluated in light of that recovery. *See Corsi,* 357 N.Y.S.2d at 747 (finding amount of fee award based on *quantum meruit* in a contingency case is subject to reconsideration in light of the facts shown at the termination of the action). It is extremely inefficient for the Court and the parties to address the proper fee amount now when that amount will either need to be revisited at the conclusion of the case or become moot.

*Third,* any amount of fees that I fix at this time would be speculative. Because discovery is still underway and the merits of the case have yet to be determined, the Court has little information upon which to base a determination of the reasonable value of Q & S services. For example, it would be difficult to evaluate whether steps taken by Q & S were reasonably undertaken and should be the subject of compensation until the result of such efforts is known. The Court will be in a much better position to determine the appropriate value of Q & S's services at the conclusion of the litigation.

Q & S argues that the Court is bound by the decision in *Lai Ling.* The facts of *Lai Ling* are distinguishable from the case at bar. *First, Lai Ling* involved a dispute between incoming and outgoing counsel, not a client and his attorney. *See* 73 N.Y.2d at 456, 541 N.Y.S.2d 742, 539 N.E.2d 570. *Second,* the attorneys in *Lai Ling* agreed by letter that the fee would be determined at the conclusion of the litigation, leaving only the issue of how to determine the fee, not when to set the fee. *See id.* at 457, 541 N.Y.S.2d 742, 539 N.E.2d 570. *Third,* and most importantly,

the issue of how to calculate a reasonable fee was addressed *after* there had been a recovery, not when the possibility of ultimate recovery was unknown. *See id.* (stating that the trial court set the attorney's fees after the action had settled for $1,800,000). The language cited by Q & S in support of its contention that an attorney in a contingency case has a right to be compensated by a fixed dollar amount in *quantum meruit* immediately upon discharge is pure dicta and is not binding on the Court. *See* Q & S Memo at 3 (citing *Lai Ling,* 73 N.Y.2d at 459, 541 N.Y.S.2d 742, 539 N.E.2d 570). Moreover, the *Lai Ling* court's suggestion defies logic.

Under a contingent fee contract, an attorney agrees to provide legal services on behalf of a client, and the client agrees to pay the attorney a percentage of whatever recovery is eventually realized from the resolution of the claim. *See* Kristina Maynard, *The Fruit Does Not Fall Far From the Tree: The Unresolved Tax Treatment of Contingent Attorney's Fees,* 33 Loy. U. Chi. L.J. 991, 996 (2002) (discussing the nature and usage of the contingent attorney's fee contract). Contingency fee arrangements enable clients, who may not otherwise be able to afford counsel, to receive legal assistance without having to pay up-front for the services. *See* Alfred D. Youngwood, *The Contingent Fee—A Reasonable Alternative?,* 28 Mod. L.Rev. 330, 300 (1965) (discussing the advantages of a contingency fee arrangement to a client who otherwise may be unable to afford representation). Because the election of a contingency fee arrangement involves a certain element of risk for the attorney, attorneys have an opportunity to recover substantial fee awards, if successful. *See* Allison F. Aranson, *The United States Percentage Contingent Fee System: Ridicule and Reform from an International Perspective,* 27 Tex. Int'l L.J. 755, 757 (1992) (noting that contingent fee con-

tracts shift the risk of loss from the client to the attorney). Inherent in that risk, however, is the possibility that attorneys will recover no compensation for the time and effort they spend litigating a case.

Clients who enter into a contingency fee arrangement do not expect to pay their attorneys unless they recover on their claims. To require clients to pay in *quantum meruit* for their attorney's services, regardless of whether there is a recovery, if they choose to discharge the attorney in the middle of the case, would penalize the clients for exercising their absolute right to terminate the attorney-client relationship at any time and render such right meaningless.

Moreover, to allow a lawyer who was retained on a contingency and subsequently discharged to be paid, regardless of whether her former client ultimately recovers, runs contrary to the very nature of contingency agreements, and would be grossly unfair. Common sense dictates that a lawyer who is fired cannot be in a better position as a result of the discharge than she would have been had she stayed in the case. The mere fact that the attorney has elected to recover under *quantum meruit* does not change the fact that she originally took the case on a contingency. Her election of *quantum meruit* means only that she can recover a fixed amount from her former client's ultimate recovery, if any.

Because the possibility of recovery in this contingency case is unknown, Q & S's attorneys' fees will not be fixed until the conclusion of the case. Payment will be secured by substituting Q & S's retaining lien for a statutory charging lien.

### B. Payment on the Liens

Even if Q & S's fees in *quantum meruit* were fixed now, the payment of such award would be deferred until the termi-

nation of the action, and would be contingent upon ultimate recovery. *See supra*, Part III.A. While there is discretion to fix the amount of Q & S's fees now, it would be imprudent in this case, for the reasons stated above.

### C. Determining Cause

■ A hearing is generally required to determine if an attorney is discharged for cause, unless there is no factual dispute. *See Hawkins v. Lenox Hill Hosp.*, 138 A.D.2d 572, 526 N.Y.S.2d 153, 154 (2d Dep't 1988) (citing *Matter of Weitling*, 266 N.Y. 184, 187, 194 N.E. 401 (1935) ("It is a serious matter to charge an attorney with such unprofessional conduct as will entitle a client to a surrender of papers in [her] possession without the payment of [her] fair and just compensation ... Testimony should be taken and the issue should be heard by the court.")); *see also Ross v. Mitsui Fudosan, Inc.*, No. 97 Civ. 0975, 1999 WL 799534, at *2 (S.D.N.Y. Sept.1, 1999) ("Where the parties dispute whether the client dismissed the attorney for cause, and the value of the work performed, an evidentiary hearing is necessary to 'determine[ ] whether or not the attorney has so conducted [her]self in [her] professional obligations or employment as to deprive [her] of any recovery.' ") (citing *In re Badger*, 9 F.2d 560, 562 (2d Cir.1925)).

Nandi claims that Q & S was discharged for "improper and excessive billing and poor legal representation." *See* Nandi Aff., at 1–2 (alleging that Q & S improperly billed Nandi for conferences and strategy sessions between lawyers in Q & S's office and for work billed to other defendants and that Q & S mishandled the matters in which it was retained). Q & S denies all these allegations. *See* Quadrino Reply Aff., at 4 (claiming Q & S's work on Universal and Nandi's case was "always performed in a professional manner").

Because there is a factual dispute as to Q & S's conduct in this matter, a cause hearing is necessary.

However, this is a contingency case, for which there may never be a legal fee. To hold a cause hearing at this stage of the litigation would result in unnecessary delay and expenditure of judicial resources. Therefore, no cause hearing will be held until the conclusion of the case. If Universal and Nandi do ultimately recover on their claims, the Court will first address the issue of cause and then, if necessary, fix and order payment of Q & S's fees.

### C. Payment on the Counterclaims

Q & S additionally claims that it is entitled to payment in *quantum meruit* for its work defending the counterclaims brought against Nandi by State Farm. *See* 10/21/02 Q & S Letter. Q & S's work on those counterclaims was governed by the same retainer and contingent fee agreement as its work on Universal and Nandi's affirmative claims. While it is not at all clear from the Retainer how such a fee would be calculated, it is clear that any such payment is contingent on ultimate recovery. Because payment on the counterclaims also depends on whether there is a recovery, it would be more efficient to wait until the conclusion of the case to fix the fee and to address all of Q & S's fee applications in one hearing.

### IV. CONCLUSION

For the reasons set forth above, Q & S's application seeking an expedited hearing to fix its attorney's fees and an order requiring payment of the amount fixed by the Court is denied. Q & S is ordered to release respondents' case file to La Sorsa immediately upon receipt of payment for its disbursements. A status conference is scheduled for November 22, 2002, at 4:30 p.m.