611 F.2d 15
 In re SHIRLEY DUKE ASSOCIATES, Debtor.
Bryan GORDON, Jr. (Appellee), Dorothy C. Gordon,
Individually, and Ralph C. Mutchler, Jr., and Sam
L. Harrell, Trustees, Plaintiffs-Appellees,
v.
SHIRLEY DUKE ASSOCIATES, A.P.I. Trust and Shirduke, Inc.,
Defendants.
Bryan GORDON, Jr. (Appellee), Dorothy C. Gordon, E. M. Bros,
Trustee for the benefit of Orpha L. Bros Estate, Peter K.
Bros, Trustee for the benefit of E. M. Bros Estate and Ralph
C. Mutchler, Jr. and Sam L. Harrell, as Trustees, Plaintiffs-Appellees,
v.
SHIRLEY DUKE ASSOCIATES, Defendant.
Appeal of WISEHART, FRIOU & KOCH.
 No. 1217, Docket 79-5006.
 United States Court of Appeals,
Second Circuit.
 Argued June 14, 1979.
Decided Dec. 3, 1979.
 
 Arthur M. Wisehart, Wisehart, Friou & Koch, New York City, for defendants.
 Cornelius H. Doherty, Jr., Fairfax, Va. (Doherty, Sheridan, Grimaldi & Shelvin, Fairfax, Va., Battle, Fowler, Jaffin, Pierce & Kheel, New York City, of counsel), for plaintiffs-appellees.
 Before GURFEIN, VAN GRAAFEILAND and NEWMAN,* Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This appeal arises out of the refusal of the bankruptcy court to enforce an attorney's charging lien under section 475 of the New York Judiciary Law[1] against the proceeds of a mortgage loan obtained by two individuals, one of whom was appellants' client and also a creditor of the Chapter XII debtor, Shirley Duke Associates.
 
 
 2
 In December 1965, Shirley Duke Properties, Inc., a Virginia corporation, purchased a two-thousand unit apartment project in Alexandria, Virginia. As part of the consideration for this purchase, Shirley Duke Properties, Inc., gave Bryan Gordon, Jr., and others, hereinafter the "clients", a second mortgage in the form of deeds of trust totaling approximately $3,400,000. A complicated series of real estate transactions followed, with the end result that title to the land was vested in an organization known as A.P.I. Trust and title to the improvements was in Shirley Duke Associates, a Virginia limited partnership. In September 1970, Shirley Duke Associates leased the improvements to Arlen Acquisitions, Inc. Because the parties interested in the property neglected to pay the real estate taxes, the second mortgagees commenced proceedings to foreclose their mortgage.
 
 
 3
 Shirley Duke Associates then filed a petition for a real property arrangement under Chapter XII of the Bankruptcy Act, and prosecution of the foreclosure action was enjoined by the bankruptcy court. Thereafter, appellants, a New York law firm, commenced several proceedings in bankruptcy court on behalf of the second mortgagees in an attempt to unravel the complicated realty transactions, establish conversion of funds or breach of fiduciary duty, and secure payment of the moneys owed their clients. Appellants' contention in brief was that the real estate transactions were a cover-up for financial chicanery and that a substantial sum of money was recoverable from A.P.I. Trust. Appellants also opposed confirmation of the proposed plan of arrangement.
 
 
 4
 Eventually, a compromise was worked out whereby the property was leased to a corporation jointly owned by Gordon and one Morton Sarubin, with sale to these men to follow if financing could be arranged. The apartments would then become part of a joint redevelopment program with an adjoining apartment project. The sale was to be for $4,400,000 in excess of the second mortgage indebtedness, $3,800,000 of which was to be used to pay off the first mortgage.
 
 
 5
 Appellants' original retainer agreement provided for a fee of $100 per hour. Appellants contend that this was subsequently modified to provide for an hourly rate of $125 plus a contingent fee of ten percent of the value of the principal preserved, I. e., the amount of the second mortgages, plus ten percent of the equity in the anticipated development of the property to be acquired by Gordon. There is no dispute between appellants and their clients as to the agreed hourly rate of $125; there is as to the alleged contingent fee or bonus arrangement. The settlement was consummated by other attorneys, and appellants did not participate. They contend, however, that Gordon promised to take care of their fees upon completion of the settlement.
 
 
 6
 When Gordon informed appellants that he would not honor their contingent fee claim, appellants petitioned the bankruptcy court for an order withholding approval of the proposed settlement and imposing an attorney's charging lien upon the proceeds of the financing which was to be obtained by Gordon and Sarubin to effectuate the purchase of the property. Appellants suggested that the amount of their fees should be determined if and when the financing was obtained.[2]
 
 
 7
 The bankruptcy judge denied appellants' petition, stating that he had no "jurisdiction to deal with disputes between third parties over property which is not part of the estate, nor subject to the distribution scheme of the Bankruptcy Act." The bankruptcy judge also held that Rule 12-28 of the Federal Rules of Bankruptcy Procedure did not support appellants' claim of lien, because that rule contemplated that payment would come from the debtor's estate as an expense of administration. The district court affirmed and subsequently denied appellants' application to modify its order of affirmance. Appellants appeal from both of the district court's orders.
 
 Discussion
 
 8
 As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy. In re Stanndco Developers, Inc., 534 F.2d 1050, 1052-53 (2d Cir. 1976); First State Bank and Trust Co. v. Sand Springs State Bank, 528 F.2d 350, 353-54 (10th Cir. 1976); Evarts v. Eloy Gin Corp., 204 F.2d 712, 717 (9th Cir.), Cert. denied, 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384 (1953); In re Hotel Martin Co., 94 F.2d 643 (2d Cir. 1938). In determining whether that rule was correctly applied in this case, it is appropriate that we examine the nature of the right that appellants asked the bankruptcy court to enforce. See In re Baxter & Co., 154 F. 22, 25 (C.C.A.2d 1907); In re McCrory Stores Corp., 19 F.Supp. 691, 693 (S.D.N.Y.1937).
 
 
 9
 A court is not empowered by section 475 of the New York Judiciary Law to enforce a charging lien upon any and all property owned by the attorney's client. See Morey v. Schuster, 159 A.D. 602, 609, 145 N.Y.S. 258 (1913), Aff'd, 217 N.Y. 639, 112 N.E. 1066 (1916); In re Robinson, 125 A.D. 424, 425, 109 N.Y.S. 827, Aff'd, 192 N.Y. 574, 85 N.E. 1115 (1908); In re Rowland, 55 A.D. 66, 67, 66 N.Y.S. 1121 (1900), Aff'd, 166 N.Y. 641, 60 N.E. 1120 (1901). The rationale of section 475 is that an attorney should have a lien for his litigation efforts that bring a fund into existence, In re Heinsheimer, 214 N.Y. 361, 365, 108 N.E. 636 (1915); In re Sebring, 238 A.D. 281, 286, 264 N.Y.S. 379 (1933); it is upon the fund thus created, either by judgment or settlement, that the lien is imposed. Desmond v. Socha, 38 A.D.2d 22, 24, 327 N.Y.S.2d 178 (1971), Aff'd, 31 N.Y.2d 687, 337 N.Y.S.2d 261, 289 N.E.2d 181 (1972). In the event of settlement, the attorney's lien attaches to the fund representing the cause of action extinguished by the settlement. Fischer- Hansen v. Brooklyn Heights R. R., 173 N.Y. 492, 499-502, 66 N.E. 395 (1903); Oishei v. Pennsylvania R. R., 117 A.D. 110, 112-13, 102 N.Y.S. 368 (1907), Aff'd, 191 N.Y. 544, 85 N.E. 1113 (1908).
 
 
 10
 An attorney representing a creditor in a bankruptcy proceeding has a judicially enforceable section 475 lien upon the fund allocated to the payment of his client's claim. See In re Pathe News, Inc., 276 F.Supp. 670, 672 (S.D.N.Y.1967). However, the attorney's lien is upon that fund only, nothing else. In re McCrory Stores Corp., supra, 19 F.Supp. at 694; See Ekelman v. Marano, 251 N.Y. 173, 176, 167 N.E. 211 (1929); Robinson v. Rogers, 237 N.Y. 467, 473-74, 143 N.E. 647 (1924); Regan v. Marco M. Frisone, Inc., 54 A.D.2d 1125, 1126, 388 N.Y.S.2d 798 (1976). In the instant case, appellants seek more; they ask the bankruptcy court to enforce a lien upon the proceeds of the loan obtained by Gordon and Sarubin, a fund that was in no way the fruits of appellants' labor. In short, appellants ask the bankruptcy court to enforce a lien that does not exist.
 
 
 11
 Whether the bankruptcy court could accede to appellants' request involves essentially a question of its jurisdiction in view of the fact that the loan proceeds were not part of the debtor's estate or under the control of the court. See Johnson v. Jahr, 1 A.D.2d 579, 580, 151 N.Y.S.2d 976 (1956); In re Albrecht, 225 A.D. 423, 426, 233 N.Y.S. 383 (1929), Aff'd, 253 N.Y. 537, 171 N.E. 772 (1930); In re Levine, 154 Misc. 700, 703, 278 N.Y.S. 36 (1935), Aff'd, 247 A.D. 19, 286 N.Y.S.2d 513 (1936); Cf. Brooks v. Mandel-Witte Co., 54 F.2d 992, 993-94 (2d Cir. 1932). If the bankruptcy court were to exercise jurisdiction, it would have to be through its supervision of the creditor Gordon. The court had no jurisdiction over Gordon's partner Sarubin or the lending institution that granted the loan. Under the circumstances of this case, we conclude that the bankruptcy court did not err in applying the general rule that, as a creditor, Gordon was subject to the court's jurisdiction in his dealings with the debtor, but not in his dealings with third parties. See Evarts v. Eloy Gin Corp., supra, 204 F.2d at 717.
 
 
 12
 There remains the question whether appellants are entitled to some compensation for services rendered on behalf of the debtor's estate. Following the entry of the orders appealed from, the sale of the Shirley Duke project to Gordon and Sarubin was consummated, and, after the first mortgage was discharged, $528,000 came into the hands of the debtor, $100,000 of which was paid to A.P.I. Trust, the former owner of the land. The bankruptcy court ordered that $168,000 be held by the debtor in the name of one of its partners, subject to the order of the court, and this money can be used to pay appellants a fee if they are entitled to it.
 
 
 13
 Rule 12-28(a) of the Federal Rules of Bankruptcy Procedure provides that "(r) easonable compensation and reimbursement of necessary expenses may be allowed by the court to . . . creditors . . . and any other parties in interest and the attorneys or agents for any of them . . . for services rendered in opposing a plan confirmation of which has been refused, and for services in connection with the administration of the estate under Chapter 12 of this title." Rule 12-28(e) provides that "(o)n the dismissal . . . of a case . . . the court may allow reasonable compensation for services rendered and reimbursement of expenses . . . by any persons entitled thereto under this rule."
 
 
 14
 On November 20, 1978, approximately six weeks after the filing of the bankruptcy judge's order, and approximately three weeks after the argument in the district court of the appeal from that order, appellants filed a claim for services against the debtor's estate. Although this fact was made known to the district judge on a motion to reconsider his order of affirmance, the district judge by order dated December 22, 1978, refused to modify his prior order. Appellants' claim was thereafter expunged without a hearing by the bankruptcy judge by order dated March 15, 1979. We think that under Rule 12-28, appellants were entitled to be heard on the question of their services to the debtor's estate.
 
 
 15
 The district court's order of affirmance, dated December 4, 1978, is affirmed. The district court's order following reconsideration, dated December 22, 1978, is affirmed, except insofar as it holds that the bankruptcy court had no jurisdiction to pass upon appellants' claim for legal services rendered to the debtor's estate; in that respect it is reversed. The matter is remanded to the bankruptcy court for further consideration of appellants' application for an allowance against the debtor's estate under Rule 12-28 for its services and disbursements.
 
 
 
 *
 Hon. Jon O. Newman was U. S. District Judge for the District of Connecticut, sitting by designation, at the time of oral argument
 
 
 [1]
 Section 475 of the New York Judiciary Law reads as follows:
 From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien. N.Y.Jud.Law § 475 (McKinney 1968).
 
 
 [2]
 A total of $68,000 has been paid appellants to date. They contend that this leaves $24,137.29 still due and owing on their basic hourly rate claim. They estimate the value of their contingent fee claim at $370,000