**In re PAN AM CORPORATION, et al., Debtors.**

**PAN AMERICAN WORLD AIRWAYS, INC., Debtors in Possession, Plaintiff,**

v.

**CARE TRAVEL CO. LTD., Joseph F. Cloidt, as Acting Clerk of the United States District Court of the Southern District of New York, and Manufacturers Hanover Trust Co., Defendants.**

**Bankruptcy Nos. 91 B 10080 (CB)—91 B 10087 (CB). Adv. No. 91–5258A.**

United States Bankruptcy Court, S.D. New York.

Feb. 20, 1992.

Cleary, Gottlieb, Steen & Hamilton by Bennette D. Kramer, Mark L. Beigelman, New York City, for plaintiff.

Malcolm A. Hoffmann by Malcolm A. Hoffmann, Lisa Frey, New York City, for defendants.

Milgrim, Thomajan & Lee by Linda C. Jamieson, New York City, for Creditors' Committee.

## DECISION ON DEFENDANT'S MOTION FOR RECONSIDERATION, DEFENDANT'S COUNSEL'S MOTION TO INTERVENE AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

### FACTS

The fundamental facts of this case have been well aired in this court before, and will therefore only be briefly reviewed in this opinion.

In 1989, Care Travel Co., Ltd.[1] ("Care Travel") brought a breach of contract action against Pan Am World Airways, Inc. ("Pan Am"), one of the Debtors herein, in the United States District Court for the Southern District of New York. On December 11, 1990, a judgment of $563,868 (the "Judgment") in favor of Care Travel was entered by the Clerk of that Court. Pan Am appealed, and in lieu of a supersedeas bond, Pan Am paid the full amount of the judgment into the Clerk of the District Court, who in turn, arranged for purchase of a certificate of deposit from Manufacturers Hanover Trust Company. On January 8, 1991, Pan Am filed its bankruptcy petition and on March 18, 1991, it commenced this adversary proceeding to avoid as a preference the transfer of the escrowed funds for the benefit of Care Travel.[2]

The Second Circuit affirmed the judgment on September 5, 1991 and four days later, this Court signed a Temporary Restraining Order submitted by Pan Am which enjoined any transfer of the escrowed funds pending a hearing. 944 F.2d 983. The hearing on the preliminary injunction and Care Travel's Motion to Dismiss was held on September 17, 1991, at the conclusion of which, this Court granted the preliminary injunction and denied the Motion to Dismiss. Thirty (30) days' time was granted within which Care Travel could file a Motion for Reconsideration and Pan Am could move for Summary Judgment. Care Travel moved for reconsideration on October 11, 1991, which motion will be addressed below. Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7056 of the Federal Rules of Bankruptcy Procedure, Pan Am has moved for summary judgment.

In addition, pursuant to Rule 24 of the Federal Rules of Civil Procedure, Care Travel's counsel, the Law Firm of Malcolm A. Hoffmann (hereinafter, "Hoffmann"), moved to intervene in this adversary proceeding to assert an interest in the escrowed funds pursuant to an alleged attorney's lien under Section 475 of the New York Judiciary Law.

### DISCUSSION

#### DENIAL OF CARE TRAVEL'S MOTION FOR RECONSIDERATION:

In this adversary proceeding, Pan Am seeks to recover an alleged preferential transfer pursuant to Section 547(b) of title

---

1. Care Travel Co., Ltd. is a foreign corporation organized under the laws of the United Kingdom. Both its registered office and its principal office are located in London, United Kingdom. In the affidavit of Care Travel's Managing Director, Rajinder Singh Dugal, he declares that the company has never done any business in the United States.

2. Pan Am, as a debtor in possession, may commence this adversary proceeding to avoid the preferential transfer because, "... a debtor in possession shall have all the rights, ... and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3) and (4) of this title, of a trustee serving in a case under this chapter." 11 U.S.C. Section 1107(a).

11 of the United States Code (the "Bankruptcy Code"). On September 17, 1991, this Court ruled that although it lacked *in personam* jurisdiction over Care Travel, it could proceed with this preference action against Care Travel because the Court possessed *in rem* jurisdiction over the escrowed *res* pursuant to 11 U.S.C. § 541 and 28 U.S.C. § 1334(d), citing *In re Deak & Co., Inc.*, 63 B.R. 422 (Bankr.S.D.N.Y. 1986).

Care Travel asserts in its "Memorandum Of Law In Support Of Defendant Care Travel's Motion For Reconsideration Of This Court's Decision Concerning *In Rem* Jurisdiction," that this Court has misapplied Judge Lifland's holding in *In re Deak & Co.*, 63 B.R. 422 (Bankr.S.D.N.Y.1986) in the September 17, 1991 ruling. According to *Deak*, Care Travel claims, this Court lacks *in personam* jurisdiction over Care Travel. Care Travel further asserts that a combined reading of *Deak* and *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) provide the authority to deny this Court *in rem* jurisdiction without also possessing *in personam* jurisdiction. In the context of the present action, the Court disagrees with Care Travel's interpretation of the two above cited cases.

The purpose of the current proceeding is only to determine the rights of the parties in particular funds. It is not meant to be an action against the person of Care Travel. Moreover, the recovery of a preference is a claim to property and requires *in rem* jurisdiction over the property of the estate and not necessarily *in personam* jurisdiction over the defendant.[3] *See Whitlock v. Worrall (In re American Aluminum Window Corp.)*, 15 B.R. 803, 805 (Bankr. D.Mass.1981). "When claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Shaffer*, 433 U.S. at 207, 97 S.Ct. at 2581.

Additionally, 28 U.S.C. § 1334(d) specifically provides:

> The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

The court in *Deak* stated that Section 1334(d) was to be "broadly construed consonant with the Code's policy of adjudicating all claims and interests against property of the estate." *Deak* at 426.

Likewise, Section 541 of the Bankruptcy Code "was intended to provide a comprehensive and broad definition of property of the estate," *Deak* at 427, including "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Section 541(a)(1). Accordingly, any property Pan Am seeks to recover under Section 547 of the Bankruptcy Code is presumably property of Pan Am's bankruptcy estate and a determination of rights thereto are within the exclusive jurisdiction of this Court.

In *Mid–Jersey National Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3rd Cir.1975), a Bankruptcy Act case derivatively relied upon by Care Travel, the court presided over a case similar to the case at bar. In *Mid–Jersey*, pursuant to a district court judgment in favor of a bank, the borrower, in lieu of a supersedeas bond, deposited cash with the court pending an appeal and a cross-appeal. During the pendency of the appeals, the borrower filed its Chapter XI bankruptcy petition. Subsequently, the borrower moved to prevent the court from adjudicating the appeals, claiming the automatic stay was in effect and, thus, the bankruptcy court possessed exclusive jurisdiction over the debtor and the property of the debtor's estate. The court held, "In the context of this case, such a deposit in court is not the property of the debtor and is not subject to the after-arising jurisdiction of the Chapter XI court." *Mid–Jersey* at 643.

---

**3.** Although at the hearing the Court concluded that it did not have *in personam* jurisdiction over Care Travel, its timely filing of a proof of claim to the escrowed funds may have now conferred *in personam* jurisdiction over Care Travel in this proceeding.

However, *Mid–Jersey* is distinguishable in a crucial fact. In *Mid–Jersey*, the subject transfer occurred approximately *nine months* prior to the filing of the debtor's petition, whereas the transfer in the instant case occurred during the 90–day period preceding Pan Am's filing of its bankruptcy petition. For the purpose of determining a bankruptcy court's jurisdiction over property in a preference action, it is during this 90–day preference period that this Court is permitted to interpret "property of the estate" within the meaning of Sections 541 and 547 of the Bankruptcy Code in its broadest possible way, thereby including the subject funds within this Court's jurisdiction.

Similarly, Care Travel's reliance on *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.Colo.1987) and *Hassett v. Blue Cross & Blue Shield (In re O.P.M. Leasing Services, Inc.)*, 46 B.R. 661 (Bankr.S.D.N.Y.1985), are not applicable to this proceeding because they, too, are distinguishable. The funds at issue in both *Carter Baron* and *In re O.P.M.* were also transferred into escrow accounts *prior to* the 90–day preference period and, thus, were not recoverable by the trustee as property of the estate pursuant to Section 547 of the Bankruptcy Code.

The court in *Nordberg v. Granfinanciera (In re Chase & Sanborn Corp.)*, 58 B.R. 721 (Bankr.S.D.Fla.1986), also ruled on a similar issue to the one before this Court. In *Chase & Sanborn*, the defendants, all foreign corporations, claimed the court lacked jurisdiction to preside over an adversary proceeding concerning certain funds deposited in bank accounts within the court's district. After noting that the "... transfers were made from the debtor's New York Bank in U.S. currency to the bank accounts of each defendant in a Miami bank," the court determined it possessed jurisdiction by stating, "[t]he entire transaction, therefore, occurred in this country and it was completed within this District ... The fact that each defendant, though then maintaining a bank account in Miami employed for the purpose of receiving these transfers, was then and is now domiciled in Columbia does not divest this court of jurisdiction." *Id.* at 723. The fact that the transfers in *Chase & Sanborn* were subject to the trustee's avoiding powers under Section 548 of the Bankruptcy Code, whereas the proceeding presently before this Court is one under Section 547 does not prevent this Court's reliance on that ruling for the broader analysis of avoiding powers in general. Both Sections 547 and 548 deal with a pre-petition "interest of the debtor in property", which may be avoided subject to the unique criteria of each section, but once avoided is ultimately recoverable to the estate under Section 550. Such avoided "transfer" then becomes "Property of the estate" pursuant to Section 541(a)(3). The jurisdiction of a Bankruptcy Court over "Property of the estate" is beyond peradventure.

The litigation initiated by Care Travel and the alleged preferential transfer that occurred immediately after the judgment took place entirely within this district. In addition, due to the fact that this adversary proceeding is an outgrowth of Care Travel's undertaking, that is, specifically seeking the privileges and the benefits of this district by voluntarily commencing its breach of contract suit here, this Court feels the minimum-contacts standard described in *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), as elucidated in *Shaffer*, has been satisfied.

Applying the principles enumerated above, since the escrowed funds are present in this district, are the source of the underlying controversy, were a direct result of litigation commenced by Care Travel in this district and were the subject of a transaction occurring entirely within this district, this Court finds sufficient contacts between the subject funds and the Southern District of New York to justify this Court's exercise of its *in rem* jurisdiction over Care Travel.

INTERVENTION:

■ Hoffmann, counsel for Care Travel, has moved to intervene in this adversary proceeding. Hoffmann claims that his intervention will not unduly burden the

Court's disposition of this adversary proceeding because there are common issues of law and fact relating to the subject matter of this preference action. Pan Am argues that Hoffmann should not be permitted to intervene due to a number of alleged procedural defects. After consideration, this Court has determined that Hoffmann's procedural defects are inconsequential and that it is appropriate to grant Hoffmann's Motion to Intervene as one in the interest of justice and judicial economy. "A bankruptcy court is authorized ... to 'issue any order that is necessary or appropriate to carry out the provisions of this title,' " specifically, to protect the debtor's estate. *In re Davis*, 730 F.2d 176, 183–184 (5th Cir.1984) (relying on § 105). Hoffmann could not intervene as of right because, as will be explained in more detail below, he does not have a claim to the escrowed funds, the subject of this action.

PREFERENCE:

Summary Judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In this case, no material facts are in dispute. Whether each and every element of a preference under Section 547(b) has been met is a question of law; therefore, this case is ripe for summary judgment.

Pan Am's transfer of the funds into escrow fulfills all of the requirements for avoidance of the transfer as a preference under Section 547(b) of the Bankruptcy Code. Section 547(b) provides: "the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

. . . .

(5) that enables the creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b).

1. *The Transfer Was Made To Or For The Benefit Of A Creditor*

A creditor is defined in Section 101(10) of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; ...." Section 101(5) of the Bankruptcy Code defines claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; ...." When Care Travel filed its breach of contract suit against Pan Am in March 1989, Care Travel asserted that it had a right to payment from Pan Am, a claim against the debtor, and thus, it became a creditor of Pan Am within the meaning of Section 547(b)(1). *See e.g., Alithochrome Corp. v. East Coast Finishing Sales Corp., (In re Alithochrome Corp.,* 53 B.R. 906, 911–912 (Bankr.S.D.N.Y.1985). Subsequently, Pan Am's transfer of the subject funds was indisputably for the benefit of protecting Care Travel's judgment in the district court and was not an action which benefitted Pan Am. Accordingly, Pan Am's transfer of the subject funds was for the benefit of a creditor, which satisfies the first element of this preference action.

2. *The Transfer Was Made For Or On Account Of An Antecedent Debt Owed By The Debtor Before Such Transfer Was Made*

"Debt" is defined in Section 101(12) of the Bankruptcy Code as "liability on a claim." As the court explained in *Energy Coop., Inc. v. SOCAP Int'l Ltd. (In re*

*Energy Coop., Inc.)*, 832 F.2d 997, 1002 (7th Cir.1987), a debt arises at the moment a party has a claim for breach of contract. In its December 27, 1990 decision, the district court determined that Pan Am breached its contract with Care Travel in or about April, 1984, long before Pan Am's transfer of the subject funds and Pan Am's filing of its bankruptcy petition. Accordingly, Pan Am's transfer on December 28, 1990 satisfies the second element of this preference action because the transfer was made on account of an antecedent debt.

### 3. The Transfer Was Made While The Debtor Was Insolvent

Pursuant to Section 547(f) of the Bankruptcy Code, there is a presumption that the debtor was insolvent on and during the 90–day period immediately preceding the date the debtor filed its bankruptcy petition. Care Travel has not presented this Court with information sufficient to rebut the statutory presumption. The third element of the preference action has accordingly been met in that Pan Am was insolvent when it transferred the subject funds.

### 4. The Transfer Was Made On Or Within 90 Days Before The Date Of The Filing Of The Petition

The courts have uniformly held that the transfer of funds into escrow occurs at the time the debtor *deposits* the funds into the escrow account. *See Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 627 (8th Cir.1984); *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 369 (Bankr.S.D.N.Y.1986). In *In re Coco*, Judge Brozman stated, "the escrow cases are uniform in holding that it is the debtor's *deposit* of funds into escrow and not the award of judgment or subsequent release of the funds that is the controlling transfer for preference purposes." 67 B.R. at 369. The court in *In re Coco* also explained that only those deposits into an escrow account which occurred prior to the 90 day period before the debtor filed its bankruptcy petition would be safe from any preference action by the trustee pursuant to Section 547 of the Code. 67 B.R. at 370. Therefore, in the present case, the

effective date of the transfer occurred on December 28, 1990, when Pan Am deposited the funds with the Court Clerk, less than two weeks before Pan Am's January 8, 1991 filing of its bankruptcy petition. Accordingly, Pan Am's transfer occurred within 90 days of the commencement of these bankruptcy proceedings and, thus, satisfies the fourth element of this preference action.

### 5. The Transfer Enables Such Creditor To Receive More Than Such Creditor Would Receive If The Case Were A Case Under Chapter 7 of This Title; The Transfer Had Not Been Made; And Such Creditor Received Payment Of Such Debt To The Extent Provided By The Provisions Of This Title

The last element of this preference action is that Care Travel would receive more than it would have received if Pan Am's bankruptcy was one under Chapter 7 of the Bankruptcy Code, the transfer had not been made and Care Travel had received payment to the extent provided by the Bankruptcy Code. One court determined that "[a]s long as the distribution in bankruptcy is less than 100 percent, any payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1417 (9th Cir.1985).

From the facts before this Court, it appears obvious that no creditor with an allowed unsecured claim will receive payment for 100 percent of his claims. *See* Affidavit of Joan Fabio, sworn to October 16, 1991 ¶ 6 ("The Liquidation Analysis shows that general unsecured claims total approximately $1,500,000,000 in a best case analysis and that approximately $3,000,000 would be available to cover the general unsecured claims ... Thus, unsecured creditors would receive considerably less than 100 cents on the dollar in the event of a liquidation under Chapter 7.") Furthermore, Care Travel became an unsecured

pre-petition creditor when it received its judgment against Pan Am on December 11, 1990. If Care Travel is allowed to receive the escrowed funds, it will receive 100 percent of its claim and, would, thus receive more upon the final distribution of the assets under liquidation than creditors in the same class. Accordingly, the fifth and final element of this preference action has been met.

Upon review by this Court, it is determined that the requisite elements of a preferential transfer within the meaning of Section 547 of the Bankruptcy Code have been met. The transfer is therefore properly subject to the avoiding powers of the debtor in possession pursuant to Section 550 of the Bankruptcy Code.

ATTORNEY'S LIEN:

█ Attorneys' liens under Section 475 of the New York Judiciary Law arise "[f]rom the commencement of an action, special or other proceeding in any court ..., the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after the judgment, final order or determination." Judiciary Law N.Y. § 475. *See Gordon v. Shirley Duke Assoc., (In re Shirley Duke Assoc.)*, 611 F.2d 15, 18 (2nd Cir.1979).

█ An attorney's lien, however, shall not *attach* to any funds used to satisfy a judgment until a final judgment has been reached. In the applicant's "Supplemental Memorandum Of Law In Support Of The Law Firm Of Malcolm A. Hoffmann's Application For Joinder In This Proceeding Pursuant To Rule 19(a)(i) F.R.C.P. Rule 7019, Rules of Bankruptcy Procedure," Hoffmann cites *Kaplan v. Port Taxi, Inc.*, 89 A.D.2d 577, 452 N.Y.S.2d 237 (2d Dep't 1982) as authority for the proposition that his lien attached to the funds when Pan Am transferred them to the Court Clerk after Care Travel received its judgment. *See Gordon v. Shirley Duke Assoc., (In re*

*Shirley Duke Assoc.)*, 611 F.2d 15 (2nd Cir.1979) ("An attorney representing a creditor in bankruptcy has a judicially enforceable Section 475 lien upon the fund allocated to the payment of his client's claim.") However, the applicant has failed to note that "[s]ection 475 of the Judiciary Law provides that an attorney who appears for a party has a lien upon his client's cause of action which attaches to a *final* order in his client's favor," and not simply a preliminary order. *Kaplan* 452 N.Y.S.2d at 238. Therefore, Hoffmann's lien could not attach to the escrowed funds until there was a final judgment in Care Travel's litigation with Pan Am. It was not until the Second Circuit's September 5, 1991 affirmation when Hoffmann's lien could attach to any proceeds thereof. Had the Second Circuit ruled in favor of Pan Am in Pan Am's appeal, surely Hoffmann would not have a lien on the escrowed funds as well.

Upon Pan Am's filing of its bankruptcy petition, the funds were no longer property of Pan Am, but rather property of the estate. Section 541. Property of the bankruptcy estate is intended to include property made available to the estate by the exercise of the trustee's avoiding powers and in which the debtor did not have a possessory interest at the time the bankruptcy case commenced. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205–206, 103 S.Ct. 2309, 2313–2314, 76 L.Ed.2d 515 (1983).

Both parties have cited *In re PDQ Copy Center, Inc.*, 27 B.R. 123 (Bankr.S.D.N.Y. 1983), concerning attorneys' liens as applicable in their favor. Although the court in *In re PDQ* discussed issues similar to the current proceeding, the case is factually distinguishable. In *In re PDQ*, an attorney claimed he possessed a charging lien against the estate for services rendered on behalf of the debtor before the commencement of the bankruptcy proceedings. Since the attorney asserting his lien had actually received the specific funds subject to his charging lien, he was simply attempting to retain his share of such funds.

In the present case, Care Travel never actually received the subject funds. Pan

Am merely deposited the funds in escrow for the benefit of Care Travel pending the outcome of its appeal.[4] The funds were set aside to preserve the status quo while protecting Care Travel from loss resulting from a stay of execution, but not to give Care Travel full title to such funds. *See Carter Baron* at 173. Pan Am specifically refrained from transferring the funds directly to Care Travel or to Care Travel's counsel. It was precisely Pan Am's transfer to the Court Clerk for the benefit of Care Travel which, as explained above, is subject to the trustee's avoiding powers for the benefit of the estate under Section 547 of the Code.

In *In re Campbell*, 26 B.R. 145, 147 (Bankr.D.Colo.1983), the court stated, "The 'fruits of the judgment' in the present fact situation will be the money distributed to the Wardens on their claim against the Debtor." In order for an attorney's lien to attach to the "fruits of the judgment," the "fruits" or proceeds of the judgment do not necessarily have to be received by the creditor. *See In re Campbell*, 26 B.R. 145 (Bankr.D.Colo.1983); *see also Gordon v. Shirley Duke Assoc. (In re Shirley Duke Assoc.)*, 611 F.2d 15 (2d Cir.1979). However, until a *final* order or judgment is entered, there are no proceeds to which the attorney's non-possessory lien may attach. Consequently, in the present case, Hoffmann's lien could not attach to any funds Pan Am allocated for payment to Care Travel until after the Second Circuit's final order on September 5, 1991. However, upon the commencement of Pan Am's bankruptcy proceedings on January 8, 1991, the subject funds were no longer property of Pan Am, but were property of the bankrupt estate recoverable by the debtor in possession and were thus beyond the reach of Hoffmann's lien. As a result, Hoffmann's lien will only be able to attach to monies *distributed* to Care Travel, if any, upon the consummation of these bankruptcy proceedings pursuant to Care Travel's allowed claim against the bankrupt estate.

**CONCLUSION:**

As set forth above, Hoffmann's Motion to Intervene is granted, Care Travel's Motion for Reconsideration is denied, Pan Am's Motion for Summary Judgment is granted and Hoffmann's attorney's lien exists only to the extent that it attaches to the monies *distributed* to Care Travel, if any, upon the consummation of these bankruptcy proceedings pursuant to Care Travel's allowed claim against the bankruptcy estate.

Plaintiff to settle order consistent with this decision on 5 days notice and within 10 days of the entry of this decision.

---

**4.** Based on the circumstances of this adversary proceeding, the Court believes that the fact that Pan Am transferred cash into the escrow account instead of obtaining a supersedeas bond has no effect on the outcome.