**In re PAN AM CORPORATION, et al., Debtors.**

**PAN AMERICAN WORLD AIRWAYS, INC., Debtor in Possession, Appellee,**

v.

**CARE TRAVEL CO. LTD., and The Law Firm of Malcolm A. Hoffmann, Appellants,**

**and**

**Joseph F. Cloidt, as Acting Clerk of the United States District Court of the Southern District of New York, and Manufacturers Hanover Trust, Defendants.**

No. 92 Civ. 2194 (CSH).

United States District Court, S.D. New York.

Feb. 24, 1993.

Opinion on Motion for Reconsideration Feb. 16, 1994.

539

Malcolm A. Hoffmann, New York City, for appellant Care Travel Co. Ltd.

George Weisz, Cleary Gottlieb, Steen & Hamilton, New York City, for defendants, appellee and debtors.

*MEMORANDUM OPINION AND ORDER*

HAIGHT, District Judge:

Care Travel Co. Ltd. ("Care Travel") appeals from a decision of the Bankruptcy Court of the Southern District of New York, (Cornelius Blackshear, J.) adjudicating rights in a fund representing a civil judgment against debtor-in-possession and appellee Pan American World Airways ("Pan Am").

BACKGROUND

Care Travel is a British corporation that entered into a contract in 1984 with Pan Am

which authorized Care Travel to sell air travel tickets for Pan Am's India and Pakistan routes. In March of 1989, Care Travel commenced an action against Pan Am in this Court, alleging that Pan Am had breached the 1984 contract. *Care Travel Co., Ltd. v. Pan American World Airways, Inc.,* No. 89 Civ. 2020 (TPG) (the "Action"). In December 1990, following a week long jury trial before Judge Griesa, the jury returned a verdict in favor of Care Travel in the amount of $563,868. A judgement in that amount was entered by the Clerk of this Court on December 11, 1990.

On December 20, 1990, Pan Am applied to Judge Griesa to be allowed to deposit the full amount of the judgment in cash with the Clerk in lieu of a supersedeas bond pending the Judge's determination of its motion for a judgment notwithstanding the verdict, and if necessary, a decision in its appeal before the Second Circuit. Judge Griesa granted the application on December 27, 1990, and on December 28, 1990, Pan Am deposited a certified check with the Clerk of this Court.

On January 8, 1991, (the "Filing Date") Pan Am Corporation *et al.,* filed with the Clerk of the Bankruptcy Court a petition for reorganization under Chapter 11 of the Bankruptcy Code. On or about March 18, 1991, Pan Am commenced an adversary proceeding (The "Preference Action") in that court pursuant to Section 547(b) of the Bankruptcy Code against Care Travel and others seeking to recover the funds it had posted with the Clerk of the District Court.

On September 5, 1991, the Second Circuit rendered a decision in *Care Travel Co., Ltd. v. Pan American World Airways,* 944 F.2d 983 (2d Cir.1991), denying Pan Am's appeal in every respect.

Care Travel defended the Preference Action on the grounds that the Bankruptcy Court lacked personal jurisdiction over defendant Care Travel and lacked subject matter jurisdiction over the funds in question as they were held *in custodia legis* by the District Court. Pan Am moved for summary judgment. Counsel for Care Travel, the Law Firm of Malcolm A. Hoffmann (the "Firm"), moved to intervene to assert its statutory lien rights on the funds held in escrow pursuant to New York Judiciary Law § 475. On February 20, 1992, Judge Blackshear granted the Firm's application to intervene, but limited its lien to monies distributed to Care Travel, if any, in bankruptcy; granted Pan Am's motion for summary judgment; and on reconsideration, denied Care Travel's motion to dismiss for lack of jurisdiction.[1] 138 B.R. 382.

Care Travel appeals that decision, arguing that the Bankruptcy Court lacked personal jurisdiction over it and lacked subject matter jurisdiction over the funds held in escrow. The Firm appeals Judge Blackshear's decision that a statutory lien for attorney's fees does not attach to the funds held in escrow.

## DISCUSSION

### I. *Subject Matter Jurisdiction*

■ The adversary proceeding below was a preference action initiated by Pan Am seeking return of the funds deposited with the Clerk of the District Court. Pan Am claims that deposit of the funds constituted a "preferential transfer" as defined by the Bankruptcy Code, and is consequently avoidable under 11 U.S.C. § 547(b).

Section 547(b) provides that a trustee may avoid any transfer of the property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; and

. . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

---

**1.** The Bankruptcy Court had originally denied Care Travel's motion to dismiss in an October 4, 1991 order following a September 19, 1991 hearing.

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Pan Am argues that the transfer to the Clerk of the District Court satisfies these requirements, and is thus avoidable as a preferential transfer.

Care Travel does not dispute that the deposit satisfies the conditions set forth in § 547(b), but argues more broadly that the Bankruptcy Court lacks the power to adjudicate the rights to funds held *in custodia legis* by the District Court. It claims that since the doctrine of *in custodia legis* precludes one court from garnishing or reaching funds held by another court, the Bankruptcy Court cannot determine ownership of the funds held by the District Court.

In support of its argument, Care Travel cites a number of bankruptcy cases where the courts held that funds held *in custodia legis* to secure a unrelated judgment pending appeal were not part of the debtor's estate, and were thus not avoidable as a preferential transfer. *See Saper v. West*, 263 F.2d 422 (2d Cir.1959); *Mid–Jersey National Bank v. Fidelity–Mortgage Investors*, 518 F.2d 640 (3d Cir.1991); *Abramson v. Superintendence Co. (In Re Casco Chemical Co.)*, 335 F.2d 645 (5th Cir.1964); *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.Colo.1987). Indeed, in each case the court held that the funds deposited pending appeal or execution of judgment were not part of the debtor's estate, and thus not avoidable.

Those cases, however, are easily distinguished from the case at bar. In each case cited above, the transfer of funds into the custody of the court or into escrow occurred more than 90 days prior to the filing of bankruptcy. *See* 11 U.S.C. § 547(b)(4)(A). Nothing in those decisions indicates that the analysis turned on the fact that the funds were held by a court rather than by any other trustee, and for that reason were not

avoidable as a preferential transfer. Rather, the crucial factor was that the transfer of funds occurred long before the filing of the bankruptcy petition. In the case at bar, the deposit of the funds occurred merely two weeks before the Filing Date, well within the 90 day period for avoiding transfers.[2]

Travel Care further argues that to allow Pan Am to avoid the transfer defeats the entire purpose of the deposit with the court. As the court in *Carter Baron* commented, "[t]he principal risk against which such bonds are intended as a protection is insolvency. To hold that the very contingency against which they guard shall, if it happen, discharge them, seems to us bad law and worse logic." *Carter Baron*, 76 B.R. at 174, quoting *Stone v. Hole*, 75 Colo. 115, 223 P. 1085, 1085 (1924).

The Court agrees that this is an anomalous result, but notes that even if the judgment had been immediately executed upon the verdict, and Pan Am paid the sum due directly to Care Travel and not appealed the case to the Second Circuit, the transfer of funds to Care Travel would still have been avoidable under § 547(b). It would be more anomalous if the fact that Pan Am paid the money into the court rather than directly to Care Travel offered Care Travel a greater degree of protection in the event of Pan Am's bankruptcy.

Although the doctrine of *in custodia legis* prevents the Bankruptcy Court from attaching, garnishing, invading, or seizing funds held by another court, it does not preclude that court from adjudicating parties' rights to those funds. Accordingly, it was appropriate for Judge Blackshear to find that the deposit was a preferential transfer as defined by the Bankruptcy Code, and therefore avoidable under § 547(b).

## II. *Personal Jurisdiction*

■ Care Travel argues that Judge Blackshear's decision should be reversed because the Bankruptcy Court lacked personal jurisdiction to adjudicate its rights to the funds held by the District Court.

---

**2.** Those cases also establish the proposition that the "transfer" which is relevant for the 90–day clock is the transfer of funds into escrow rather than the release of funds out of escrow.

According to the findings of fact made by Judge Blackshear, which are undisputed, Care Travel is a foreign corporation organized under the laws of the United Kingdom. Both its registered office and its principal office are located in London, England. Its managing director claims that Care Travel has never done any business in the United States.

Care Travel asserts that given these circumstances, there are insufficient minimum contacts to sustain the exercise of jurisdiction over them by the Bankruptcy Court.

It is not completely clear from the Bankruptcy Court's opinion whether its exercise of jurisdiction was based on *in rem* jurisdiction over the funds as part of the bankruptcy estate, or minimum contacts with the forum sufficient to satisfy *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (in order to justify exercise of jurisdiction *quasi in rem,*[3] the basis of jurisdiction must be sufficient to justify exercising jurisdiction over the interests of persons in the thing), and *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (personal jurisdiction requires minimum contacts with the forum such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice). Travel Care argues that the court relied solely on *in rem* jurisdiction, which is insufficient given the holding of *Shaffer.* Pan Am takes the position that there is a basis for jurisdiction both *in rem* and under a minimum contacts analysis.

In *Whitlock v. Worrall (In re American Aluminum Window Corp.),* 15 B.R. 803, 805 (D.Mass.1981), the court held that recovery of a preference requires *in rem* jurisdiction over the property of the estate and not necessarily *in personam* jurisdiction over the defendant. In the case at bar, there is clearly *in rem* jurisdiction over the funds held by the District Court.

However, even if minimum contacts are required for the Bankruptcy Court to adjudicate the rights of Care Travel to the funds held in escrow, I am satisfied that those requirements are more than met. Although Care Travel never did business in the United States, it has had sufficient contacts with this forum to make the exercise of jurisdiction over it reasonable. *See Insurance Co. of North America v. Marina Salina Cruz,* 649 F.2d 1266, 1269–70 (9th Cir.1981).

Initially, I note that the presence of the fund in New York is one contact with the forum. The *Shaffer* court commented that "when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction." *Shaffer,* 433 U.S. at 207, 97 S.Ct. at 2581.

Most importantly, Care Travel has purposefully availed itself of the resources and the protections of New York law and the federal courts in this state. It initiated legal action in New York seeking recovery for breach of contract. It hired New York counsel, and presumably engaged in discovery in New York. It demanded a jury trial, and the posting of funds pending appeal. After bringing Pan Am before the District Court, I cannot see how Care Travel could be at all surprised to find itself brought before the Bankruptcy Court for the District to resolve issues arising out of its invocation of the District as a forum.

I need not decide whether *in rem* jurisdiction or minimum contacts forms a sufficient basis for jurisdiction in a preference action, as both are present here.

### III. *Attorney's Lien*

■ Judge Blackshear held that the Firm's attorney's lien exists only to the extent that it attaches to the monies *distributed* to Care Travel, if any, upon the consummation of these bankruptcy proceedings pursuant to Care Travel's allowed claim against the bankruptcy. Intervenor Firm claims that this ruling is in error.

The Firm argues that § 475 of the New York Judiciary Law provides for an attor-

---

**3.** *Shaffer* involved application of "quasi in rem" jurisdiction, but the Court made it clear that the minimum contacts analysis would apply to pure-

ly "in rem" jurisdiction as well. *Id.,* at 207, 97 S.Ct. at 2581.

ney's lien against the proceeds of a client's cause of action. The Firm points out that such a lien would not be avoidable as a preferential transfer under 11 U.S.C. § 547(c)(6), which provides that "the trustee may not avoid under this section a transfer ... that is the fixing of a statutory lien that is not avoidable under Section 545 of this title."

Pan Am does not suggest that New York's attorney's lien is not exempt under this provision, but instead argues that the lien only attaches to funds that the client was entitled to; since Care Travel was never entitled to that money (the avoidance action preceded the Second Circuit decision), no lien ever attached to the funds. Pan Am argues that the District Court's order in favor of Care Travel was not final until it was affirmed by the Second Circuit; thereby the Firm is only entitled to a lien on what Care Travel actually receives from the distribution from the Bankruptcy Court.

Judge Blackshear's decision is based on his finding that there was no final judgment against Pan Am until the Second Circuit affirmed the lower court's decision. See Decision, pp. 389–90. Although Care Travel would not have had any claim to the funds in the event the Second Circuit reversed, unless and until they did, the funds belonged to them. The judgment was final when the jury returned its verdict. See Fed.R.Civ.P. 58 ("(1) upon a general verdict of a jury ... the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court.") The Clerk entered an order of judgment on December 11, 1990. At that time, the judgment was final. The attorney's lien under § 475 of the Judiciary Law attaches, inter alia, to "a judgment or final order in his client's favor ..."

Since Judge Blackshear erred in finding that the judgment was not final, that part of his order is vacated, and remanded for further proceedings consistent with this judgment. The rest of his decision is affirmed.

It is SO ORDERED.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR RECONSIDERATION

Debtor-in-possession and appellee Pan American World Airways ("Pan Am") moves for reconsideration of part of this Court's Memorandum Opinion and Order dated February 22, 1993.

### BACKGROUND

The facts which gave rise to this dispute are set forth more fully in the Court's February 1993 decision, familiarity with which is assumed. The Law Firm of Malcolm A. Hoffmann (the "Firm") represented Care Travel Co. Ltd. ("Care Travel"), a British travel agency, in a breach of contract action against Pan Am. In December 1990, a jury in the Southern District of New York returned a verdict in favor of Care Travel in the amount of $563,868. Care Travel Co., Ltd. v. Pan American World Airways, Inc., No. 89 Civ. 2020 (TPG) (the "Underlying Action"). The Clerk of the Court entered judgment in that amount on December 11, 1990. On December 28, 1990, Pan Am deposited the full amount of the judgment in cash with the Clerk of the Court pending appeal to the Second Circuit.

On January 8, 1991, Pan Am Corporation et al., filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. On or about March 18, 1991, Pan Am commenced an adversary proceeding (the "Preference Action") in the bankruptcy court pursuant to Section 547(b) of the Bankruptcy Code against Care Travel and others seeking to recover the funds it had posted with the Clerk of the Court. The Firm intervened in the Preference Action to assert its statutory lien rights on the funds held in escrow pursuant to New York Judiciary Law § 475.

On September 5, 1991, the Second Circuit rendered a decision in Care Travel Co., Ltd. v. Pan American World Airways, 944 F.2d 983 (2d Cir.1991), denying Pan Am's appeal in every respect.

On February 20, 1992, Judge Blackshear granted Pan Am's motion for summary judgment in the Preference Action, finding that

the deposit of funds with the Clerk constituted an avoidable transfer under 11 U.S.C. § 547(b). Judge Blackshear also held that Firm's lien was limited to monies actually distributed to Care Travel, if any, in bankruptcy.

Care Travel appealed to this Court, arguing that Judge Blackshear's decision in the Preference Action was erroneous. The Firm also appealed Judge Blackshear's decision with respect to its attorney's lien.

By Memorandum Opinion and Order, this Court agreed with Judge Blackshear that the transfer of funds to the Clerk of the Court was an avoidable transfer under § 547(b). However, the Court also held that Judge Blackshear's ruling with respect to the Firm's lien was premised on the erroneous conclusion that the district court's judgment in the underlying action was not a final order within the meaning of New York Judiciary Law § 475. Accordingly, the case was remanded to the Bankruptcy Court for further proceedings consistent with the opinion.

Pan Am moves for reconsideration of the Court's opinion insofar as it concerns the Firm's attorney's lien. Pan Am argues that this Court overlooked controlling Second Circuit precedent in reaching its decision.

## DISCUSSION

New York Judiciary Law § 475 provides in pertinent part:

> [T]he attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; ... .

The parties agree that a valid lien under this provision cannot be avoided as a preferential transfer under 11 U.S.C. § 547(b). The question thus comes down to whether the Firm has a valid lien on the funds held by the Clerk. That question turns on whether a lien could attach to the funds held by the Clerk in the period between the entry of judgment in the district court and the filing of the petition in bankruptcy petition.

Judge Blackshear held that the Firm's lien could not attach to the escrowed funds until there was a final judgment in Care Travel's litigation with Pan Am, and there would be no final judgment until the Second Circuit affirmed the judgment of the district court. This Court held that a district court judgment constitutes a final judgment, and remanded to the Bankruptcy Court for a further determination of the amount of the Firm's lien.

Pan Am takes issue with this Court's decision, arguing that the Court overlooked a controlling Second Circuit decision, *O'Keefe v. Landow*, 289 F.2d 465 (2d Cir.1961). In *O'Keefe*, Construction Associates issued a promissory note to the order of one Lanson for $2700. Lanson subsequently transferred the note to one Klipper. Klipper hired an attorney to commence an action against Construction Associates on the note. That action was settled by a stipulation which provided that Construction Associates would pay $2430 to Klipper's attorney, to hold in escrow "pending the judicial determination of the claim to the proceeds of the note ... asserted by the Trustee in Bankruptcy of Lanson Wood Products Corp." Upon final determination of the Trustee's claim, the "net proceeds" of the note would be turned over to the "prevailing party."

Shortly thereafter, the trustee in bankruptcy commenced an action against Klipper seeking to set aside the transfer of the $2700 note as a preferential transfer. Following proceedings in bankruptcy, the court directed Klipper's attorney to turn over to the trustee the $2340 held in escrow. The attorney argued that the court's order destroyed a valid and subsisting attorney's lien. The Second Circuit held that

> the attorney's lien would attach only to the funds to which Klipper would have been entitled. An attorney cannot obtain a lien against funds to which his client has no claim. The escrow funds were not the property of Klipper and would have become so only if Klipper had turned out the be the prevailing party in his dispute with the Trustee over the proceeds of the note.

*O'Keefe*, 289 F.2d at 466.

Pan Am argues that whether an attorney's lien can attach to proceeds turns on whether

the client is ultimately entitled to those funds. Applying that principle to the facts of the case at bar, Pan Am maintains that no lien could attach until Care Travel was entitled to the funds, which did not occur until the district court's judgment was affirmed by the Second Circuit.

I do not believe *O'Keefe* compels the result sought by Pan Am.[1] The facts of that case make it resemble an action in the nature of interpleader; although Klipper sued Construction Associates on the note, prior to the resolution of that dispute, the parties were on notice that the trustee for Lanson had a claim on the funds as well. The settlement between Klipper and Construction Associates was an interim settlement, resolving only Construction Associates' rights on the note, not the trustee's claims. It was not until the trustee's claims were resolved that there was a final resolution[2] of the conflicting claims to the funds.

By contrast, in this case, following the district court trial, there was a final judgment in the case, resolving all disputed issues and claims. Pan Am's argument that there could be no final judgment until the Second Circuit affirmed is simply wrong. Section 475 specifically provides that a lien attaches to a judgement or final order. It is well settled that under New York law, a judgment is final upon entry of judgment by the trial court, and is not affected by the pendency of an appeal. *See In re Bailey*, 265 A.D. 758, 40 N.Y.S.2d 746, 749 (1st Dept.1943) (final judgment "designates the judgment of the court of original jurisdiction by which the rights of the parties are adjudicated and determined. The finality of the judgment so entered is not affected by the pendency of an appeal."), *aff'd*, 291 N.Y. 534, 50 N.E.2d 653 (1943); *In re Arker*, 6 B.R. 632, 634 (E.D.N.Y.1980) ("It is a well established prin-

ciple of law in New York that the finality of a judgment is not affected by the pendency of an appeal ... Absent a stay, execution on the judgment may proceed while the appeal is pending.") *Connelly v. Wolf, Block, Schorr and Solis-Cohen*, 463 F.Supp. 914, 918 n. 3 (E.D.Pa.1978) ("It has been held that the finality of a judgment in New York ... is not affected by the pendency of an appeal."); *Slewett & Farber v. Board of Assessors*, 80 A.D.2d 186, 438 N.Y.S.2d 544, 556 (2d Dept. 1981) ("The finality of the determination is not affected either by the pendency of an appeal of by the fact that the time to appeal has not yet run."). The entry of judgment by the district court constituted a final order or judgment within the meaning of the statute, and the Firm's attorney's lien then attached. The different result in *O'Keefe* is possibly explained by the fact that the settlement was an interim or partial settlement which did not finally resolve all disputed claims. Under those circumstances, no lien could attach.

In its motion for reconsideration, Pan Am raises for the first time the argument that the specific terms of the retainer agreement between the Firm and Care Travel provide that the Firm could only recover legal fees from the monies actually distributed to Care Travel. New arguments are not appropriately raised on a motion for reconsideration. Accordingly, the Court need not consider it.

Pan Am's motion to reconsider the Court's 1993 opinion is denied. This case is remanded to the Bankruptcy Court for further proceedings consistent with this Memorandum Opinion and Order.

It is SO ORDERED.

---

1. I also question the continuing validity of *O'Keefe*. That 23–year–old opinion, which does not cite a single authority, state or federal, for its holding, addresses a question of New York law—when an attorney's lien under § 475 attaches to a fund. More recent New York authority reaches a different result. In *Kaplan v. Port Taxi, Inc.*, 89 A.D.2d 577, 452 N.Y.S.2d 237, 238 (2d Dept. 1982), the Appellate Division reversed a lower court decision which held that an attorney did not have a valid lien on certain proceeds because

it was eventually determined that his client was not entitled to the funds. The Appellate Division expressly held that entitlement was not a necessary element for an attorney's lien to attach.

2. Although an attorney's lien under § 475 normally attaches to a "judgment or final order", the statute also provides that "the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination."